Pauline D. ROSE (Widow of Charlie C. Rose), Petitioner,

v.

**CLINCHFIELD COAL COMPANY, Respondent.**

No. 79–1187.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1979.

Decided Feb. 6, 1980.

Frederick W. Adkins, Norton, Va. (Cline, McAfee & Adkins, Norton, Va., on brief), for petitioner.

Elizabeth S. Woodruff, Abingdon, Va. (Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief), for respondent Clinchfield Coal Co.

Virginia B. Ragle, U. S. Dept. of Labor (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, Lee D. Richardson, U. S. Dept. of Labor, Washington, D. C., on brief), Washington, D.C., for respondent Director, Office of Workers' Compensation Programs.

Before BRYAN, Senior Circuit Judge, and BUTZNER and MURNAGHAN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Petitioner, Pauline D. Rose, seeks the reversal of a decision by the United States Department of Labor, Benefits Review Board (the Board) denying her compensation under the Black Lung Benefits provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 901 *et seq.* (the Act).

In its January 31, 1979, decision, the Board (one member dissenting) vacated the Hearing Officer's previous finding that petitioner ,was entitled to an award; the Board rejected her claim on the ground that her deceased husband's disability and death were caused by lung cancer and not by pneumoconiosis ("black lung").[1] On review of the record, we find that substantial evidence does not support the Board's ruling. Accordingly, we reverse, vacating the decision of the Board and ordering payment of benefits to the claimant.

---

1. Pursuant to a provision of the Black Lung Benefits Reform Act of 1977, which amended certain provisions of the 1969 Act, cases pending on the effective date of the amendments and *subsequently denied would be remanded to* the Deputy Commissioner for review, generally on the existing record, under the 1977 Act. 30 U.S.C. § 945. Accordingly, the Board directed that the instant claim be so remanded.

In view of the remand, respondent Clinchfield Coal Company moved to dismiss this appeal on the assertion that the order of the Board was not final, and hence not appealable. The motion was denied by this court on July 31, 1979, because the criteria for benefits under the 1977 Act differ from those under the 1969 Act. *See Treadway v. Califano,* 584 F.2d 48 (4th Cir. 1978). Since the court now overrules the Board's order, the question of remand no longer remains.

Petitioner's husband, Charlie Rose, was employed by respondent Clinchfield Coal Company (the Company) without interruption for 27 years, during 18 of which he worked underground. In the final period he worked in various capacities in the Company's coal processing plant. Both types of work subjected him to continuous and substantial exposure to coal dust.

The parties agree, and the Board found, that Rose suffered from simple pneumoconiosis, having first been advised of his condition in 1972. He also suffered from lung cancer. Because of his lung problems, Rose was required to stop work for the Company on September 25, 1974. In December, 1974, he lodged a claim with the Department of Labor for Black Lung benefits.[2] He died February 6, 1975, and the cause of death was listed as cancer of the lung with metastasis.

On February 8, 1975, petitioner filed her claim for benefits as Rose's widow. After conducting a hearing December 17, 1975, on the consolidated claims, the Hearing Officer issued an order, dated November 3, 1976, which held that petitioner had proved her claims and that Clinchfield, as the responsible coal operator, was answerable for their satisfaction. On Clinchfield's appeal, the Board reversed the Hearing Officer and rejected petitioner's claims in an opinion dated January 31, 1979.

The primary basis of the Board's decision, as well as the position of both of the respondents in this appeal, Clinchfield and the Director of the Office of Workers' Compensation Programs of the Department of Labor, is that, since the Act affords benefits "in respect of the death of any miner whose death was due to pneumoconiosis or who at the time of his death was totally disabled by pneumoconiosis," 30 U.S.C. § 921(a), the claimant here cannot succeed, because neither the disability nor the death of miner Rose was "due to pneumoconiosis," but rather to cancer of the lung.

The causative distinction on which this resolve rests, however, cannot obtain so literally when read against the other dictates of the Act and the corresponding regulations issued by the Secretary of Labor. Together they imperatively govern the determination of whether disability or death is "due to pneumoconiosis." These provisions spell out modifying presumptions which serve to endow the term "pneumoconiosis" with a broad definition, one that effectively allows for the compensation of miners suffering from a variety of respiratory problems that may bear a relationship to their employment in the coal mines.

Among the key provisions of this relief legislation is section 411(c)(4) of the Act:

If a miner was employed for fifteen years or more in one or more underground coal mines, [and if chest roentgenogram is negative as to complicated pneumoconiosis], and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. . . . *The Secretary may rebut such presumption only by establishing* that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

30 U.S.C. § 921(c)(4). (Accent added.)

Under this section petitioner will prevail because she meets its prerequisites, as the following apposition of her claim and the statute makes manifest. First, that Charlie Rose was employed for more than 15 years in underground coal mines is not questioned. Second, as the Board noted, the Hearing Officer found Rose ceased work because of his "simple pneumoconiosis coupled with his severe breathing impairment

---

2. In 1972 he had presented a claim to the Industrial Commission of Virginia, the State workmen's compensation agency, an initial step required by the Act, 30 U.S.C. § 923(c).

He had, at the Commission's direction, received fifty weekly compensation payments from Clinchfield Coal Company.

which was caused by lung cancer . . ." *Rose v. Clinchfield Coal Company,* BRB No. 76–490 BLA, at 2 (Jan. 31, 1979). The Board, in overturning the Hearing Officer's award, did not question the implicit finding that Rose's lung cancer constituted a "totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4).[3]

The showing that Rose (1) had served more than the requisite number of years in the mines and (2) had suffered from a disabling respiratory impairment triggers the presumption set forth in section 411(c)(4). The statute quite clearly gives the claimant, at this point, the benefit of a presumption that entitles her to compensation *unless* the Secretary rebuts that presumption in the precise manner specified. 30 U.S.C. § 921(c)(4)(A), (B). Rebuttal under clause (A) is precluded, given the uncontested fact that Rose did suffer from simple pneumoconiosis.[4] Accordingly, the Rose claim under section 411(c)(4) may be defeated *only* upon the respondents' production of substantial evidence that the decedent's "impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4)(B); 20 C.F.R. § 410.454(b)(2). *See Clinchfield Coal Company v. Fleming,* 606 F.2d 441, 442 (4th Cir. 1979).

■ The Board erred in failing to impose on the respondents the burden of rebutting this presumption. The Board concluded that the claimant "did not establish entitlement to black lung benefits" under section 411(c)(4) of the Act because she failed to demonstrate "any causal relationship. . . between the miner's cancer and pneumoconiosis or between his cancer and his coal mine employment." *Rose v. Clinchfield Coal Company,* BRB No. 76–490 BLA, at 7 (Jan. 31, 1979). Her failure to demonstrate such a relationship, however, does not bar her recovery; on the contrary, it is the respondents' failure effectively to rule out such a relationship that is crucial here. Testimony elicited by the Company from Dr. S. W. Morgan, the deceased miner's physician, and apparently accorded considerable weight in the Board's decision, *id.* at 6–7, is clearly insufficient to meet the statutory burden. At best, the testimony established only that the physician would not state with certainty that the miner's cancer did arise from his previously existing pneumoconiosis or from his work in the mines; the witness did not rule out the possibility of such a connection.[5]

■ The creation of certain presumptions favoring claimants and the corresponding imposition of certain burdens on those opposing claims under the Act reflect the purpose of the statute. *See* 30 U.S.C. § 901. Congress intended that the Act should receive a liberal construction in favor of the miner and his dependents. *See, e. g., Wheatly v. Adler,* 132 U.S.App.D.C. 177, 183, 407 F.2d 307, 313 (D.C. Cir. 1968). Having failed to hold the respondents to

---

3. *See* 20 C.F.R. §§ 410.401(b)(2) (defining "pneumoconiosis" to encompass "[a]ny other chronic respiratory or pulmonary impairment" satisfying the conditions for the presumptions), 410.412 (defining "total disability"), 410.454 (b)(1) (establishing conditions for presumption of pneumoconiosis for survivor's claim).

Respondents make much of the use of the term "chronic" in the regulations, asserting that cancer is an "acute" disease. In the absence of a specific definition of the term in these provisions, no such technical distinction should be made. In view of the fact that Rose's lung cancer was initially diagnosed, at an advanced stage, on November 14, 1974, and Rose's death occurred on February 6, 1975, it is not unreasonable to characterize his lung cancer as a progressive condition of some duration—in short, a "chronic" condition.

4. The provision in no way indicates that any more severe form of the ailment is meant; rather, simple pneumoconiosis is embraced within the broad definition of the term "pneumoconiosis" in the regulations. *See* 20 C.F.R. § 410.401(b)(1).

5. Asked whether, in his opinion, Rose's cancer was "due to pneumoconiosis," the physician responded:

There is no evidence that it was, but then, you know, since I don't know how this ties in with pneumoconiosis, I can't say that it did or didn't, no way I can be——

The most emphatic statement that was elicited from Dr. Morgan remains equivocal:

Between coal dust and cancer of the lungs, no, I couldn't say I have any reason to believe that coal dust causes cancer of the lung, if that's what you are asking me.

their statutory burden, the Board improperly denied claimant Rose the benefit of the presumption contained in section 411(c)(4) of the Act.

On these premises, the decision of the Board is vacated, Mrs. Rose allowed the benefits she claimed under the Act, and the respondents ordered to satisfy the claim.

Vacated and Payment of Benefits Ordered.