**PALMER COKING COAL COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS OF UNITED STATES DEPARTMENT OF LABOR, and George Savicke, Respondents.**

**No. 83–7062.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1983.

Decided Nov. 17, 1983.

Keith R. Baldwin, Seattle, Wash., for petitioner.

Joseph Bednarik, Washington, D.C., for respondents.

Before WRIGHT, PREGERSON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Palmer Coking Coal Co. (Palmer) appeals from the final decision of the Benefits Review Board, United States Department of Labor (Board), affirming the award of benefits to George Savicke under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq.[1] On appeal we are asked to determine whether the record as a whole contains substantial evidence that Mr. Savicke is totally disabled by pneumoconiosis within the meaning of the statute; and whether the Board erred as a matter of law in holding that the Black Lung Benefits Act applies to a coal miner who retired before becoming totally disabled by pneumoconiosis.

FACTS

George Savicke, currently 69 years old, worked as an underground coal miner for over thirty-six years. He worked for Palmer continuously from 1950 until Palmer closed its mines in January 1976. Savicke then retired and began collecting his United Mine Workers Pension. He has not worked since. In November 1976, Savicke filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. At the hearing before the Administrative Law Judge (ALJ) on November 19, 1980, Savicke testified that when he stopped working he felt tired all the time and short of breath, but that he had not missed any work days because of his condition. He smoked less than a pack of cigarettes per day during most of his adult life. His medical evidence included Dr. Robert G. Bond's written report of a March 14, 1977 examination of Mr. Savicke. Dr. Bond noted emphysematous rales in all lungs, a respiratory wheeze, an enlarged liver, and edema of the lower extremities. The miner had reported to Dr. Bond a chronic productive cough which had increased in severity for thirty-eight years, as well as shortness of breath on exertion. Ventilatory and blood gas studies indicated disabling respiratory abnormalities. Dr. Bond diagnosed far advanced chronic obstructive pulmonary disease related to coal dust exposure, and advised the miner to avoid bending, lifting, stooping, walking, and climbing.

The employer introduced the report, supplemental report, and oral testimony of Dr. Thomas Sheehy. Dr. Sheehy had examined Savicke at Palmer's request on December 11, 1979. Dr. Sheehy's first report stated:

The chest x-ray is nondiagnostic as far as the usual characteristics of pneumoconiosis due to silicosis are concerned. The pulmonary function studies revealed a marked hyperinflated state and the delayed flow rates which are compatible with emphysema. However, it is extremely unusual to find this degree of diffusion with emphysema alone, and

---

**1.** The Act had been Title IV of the Federal Coal Mine Health and Safety Act of 1969 prior to March 1, 1978, the effective date of the Federal Mine Safety and Health Amendments Act of 1977, Pub.L. No. 95–164, 91 Stat. 1290. The Act was substantially amended by The Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150, and by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95. For clarity and simplicity, the statute is here referred to as the Black Lung Benefits Act, its current common title. See 30 U.S.C. § 921(a).

·usually there are other factors at play. I must assume then that this degree of impairment in his diffusion must be related to his mining experience. It would be more consoling to the examiner if there were x-rays compatible with pneumoconiosis, but there is no other way I can explain his diffusion defect of this severity with these pulmonary function studies without invoking the fact that there must be impairment in the ability to diffuse gas which would be due to his pneumoconiosis, i.e., silicosis or anthracosis.

His diagnosis was that the miner suffered from "chronic obstructive pulmonary disease, severe, with marked diffusion defect." However, Dr. Sheehy later prepared a supplemental report in which he changed his opinion about the cause of Mr. Savicke's disability. In the second report and in his oral testimony, Dr. Sheehy attributed the disability "almost entirely" to emphysema resulting from cigarette smoking. Without conducting a second examination, he based this new opinion on Savicke's negative x-ray, the results of the arterial blood gas test which he considered to be incompatible with a diffusion defect, and his characterization of the diffusion study as unreliable. In his oral testimony, Dr. Sheehy denied that a marked diffusion defect was present.

On January 20, 1981 the ALJ issued an order granting benefits to Mr. Savicke. The ALJ found that at least by the time of the second set of tests in December 1979, Savicke suffered from a severe pulmonary impairment which disabled him from performing his former level of work. The Board subsequently affirmed the award.

STANDARD OF REVIEW

The Board reviews decisions of the ALJ under the substantial evidence standard. 33 U.S.C. § 921(b)(3) *incorporated by* 30 U.S.C. § 932(a). The Board must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1284 (9th Cir.1983). We review the Board's decisions for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." *Id.* (quoting *Bumble Bee*

*Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980)). To determine whether the Board adhered to the proper standard, we conduct an independent review of the administrative record. *Bumble Bee Seafoods,* 629 F.2d at 1329.

STATUTORY BACKGROUND

Congress enacted the Black Lung Benefits Act to:

> provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to insure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

30 U.S.C. § 901(a). The statute defines pneumoconiosis broadly to include any "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b). As a prerequisite to compensation, a miner must show total disability as defined statutorily:

> [A] miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time.

*Id.* § 902(f)(1)(A). Under the regulations authorized by 30 U.S.C. § 921(b), a miner who engaged in coal mine employment for at least ten years is allowed to invoke a rebuttable presumption of total disability due to pneumoconiosis when he satisfies specific medical requirements. 20 C.F.R. § 727.203(a) (1983). The presumption may arise from positive x-ray findings, *Id.* § 727.203(a)(1); abnormal ventilatory studies, *Id.* § 727.203(a)(2); abnormal blood gas studies, *Id.* § 727.203(a)(3); or "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establish[ing] the presence of a totally disabling respiratory or pulmonary impairment," *Id.* § 727.203(a)(4).

Once the presumption is invoked, the burden of going forward with the evidence shifts to the employer. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 27, 96 S.Ct. 2882, 2898, 49 L.Ed.2d 752 (1976). To rebut this presumption, the employer must demonstrate that the miner is performing or is able to perform his usual coal mine work or comparable gainful work, or that the miner's disability did not arise in whole or in part from coal mine employment, or that the disability is not pneumoconiosis. 20 C.F.R. § 727.203(b).

DISCUSSION

▆▆▆ The Black Lung Benefits Act is remedial in nature and should be given a liberal construction. *See, e.g., Dobbins v. Schweiker,* 641 F.2d 1354, 1360–61 (9th Cir. 1981). The spirit of the legislation requires that doubts be resolved in favor of the disabled miner. *Id.* at 1357 (citing S.Rep. No. 743, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2305, 2315).

The ALJ found that the medical evidence satisfied the conditions of 20 C.F.R. § 727.203(a)(4), and invoked the presumption of total disability due to pneumoconiosis. Palmer disputes this finding. However, both Dr. Bond and Dr. Sheehy concluded that Mr. Savicke suffered from a severe pulmonary condition which rendered him disabled on or before December 1979; the medical reports differed only as to the cause of the disability. We agree with the Board that the "medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 727.203(a)(4). *Cf. Rose v. Clinchfield Coal Co.,* 614 F.2d 936, 939 (4th Cir. 1980) (implicit finding that lung cancer constituted a totally disabling respiratory or pulmonary impairment satisfied conditions for presumption).

▆▆▆ Palmer next argues that Dr. Sheehy's report and testimony showed that Savicke's ailment was not pneumoconiosis and was not caused by coal mine employment, thus rebutting the statutory presumption. To rebut the presumption that the respiratory ailment is pneumoconiosis, the employer must produce sufficient evidence to rule out any causal link between the disability and the coal mine employment. *See, e.g., Rose,* 614 F.2d at 939.

▆▆▆ Here, even though in his amended report Dr. Sheehy purported to attribute Savicke's disability to cigarette-induced emphysema, the record shows that Dr. Sheehy also conceded that in the present state of the medical art, he could not rule out industrial bronchitis as the cause of the claimant's diffusion defect, or coal mining as the ultimate cause of that portion of his pulmonary impairment. Moreover, Dr. Sheehy's reports and testimony were inconsistent both as to the cause of the disability and as to the interpretation of test results. It is properly within the competency of the fact finder, not of the reviewing court, to credit or discredit evidence and to draw inferences from the credited evidence. The fact finder "is not bound to accept any particular physician's diagnosis, but is free to draw his own inferences from the medical testimony." *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797, 802 (7th Cir.1977). We may not substitute our own judgment for that of the trier of fact who heard the testimony and observed the witness's demeanor. *Id.* We conclude that substantial evidence in the record supports the ALJ's conclusion that Dr. Sheehy's testimony did not rebut the presumption.

▆▆▆ Palmer finally contends that the ALJ erred as a matter of law in holding that the Black Lung Benefits Act applies to a coal miner who retired before becoming totally disabled by pneumoconiosis. This argument is frivolous. In *National Independent Coal Operator's Association v. Brennan,* 372 F.Supp. 16, 25 (D.D.C.) (three-judge panel), *aff'd without opinion,* 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974), the court stated:

> The statute itself, as well as the legislative history, clearly indicates congressional intent that benefits be available under Section 422 [*codified at* 30 U.S.C. § 932] where a claimant meets the filing requirements of that section, regardless of the termination of employment of the miner on whose death or disability the

claim is based. It is clear that Congress intended to provide full protection to older, retired miners who have only recently discovered the disease or in whom the disease is still latent.

In *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. at 19–20, 96 S.Ct. at 2894–2895, the Court treated the issue of retroactivity more fully. The Court concluded that the "Due Process Clause poses no bar to requiring an operator to provide compensation for a former employee's death or disability due to pneumoconiosis arising out of employment in its mines, even if the former employee terminated his employment in the industry before the Act was passed." In upholding the retroactive aspects of the Act, the Court affirmed that Congress intended that a miner such as George Savicke who has demonstrated total disability caused by pneumoconiosis should be compensated even though his disability does not translate into a recognizable income loss.

The decision of the Board is AFFIRMED.