John C. HULBERT and Wilma A. Hulbert, Parents and Next Friends of Trevor Kenneth Hulbert, Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–1335V.

United States Court of Federal Claims.

May 11, 2001.

Robert T. Moxley, Cheyenne, Wyoming, for petitioners.

Mark W. Rogers, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, for defendant. With him on the briefs were Stuart E. Schiffer, Acting Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerald W. Fischer, Assistant Director.

## OPINION

BRUGGINK, Judge.

Pursuant to 42 U.S.C. § 300aa–12(c) (1994 & Supp. V 1999), petitioners have requested review of a final decision entered by Special Master Laura D. Millman denying them relief under Part 2 of the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), *as amended,* 42 U.S.C. §§ 300aa–11 to –34 (1994 & Supp. V 1999),[1] for injuries allegedly sustained by Trevor Hulbert as a result of receiving the diphtheria-pertussis-tetanus ("DPT") vaccine. For the reasons set forth below, we affirm Special Master Millman's decision.

## BACKGROUND

Trevor Hulbert ("Trevor") was born on July 4, 1985. Since birth, Trevor has suffered from tuberous sclerosis ("TS"). TS is a "genetic disorder that results in cortical lesions or tubers on the brain." *Hanlon v. Sec'y of HHS,* 191 F.3d 1344, 1347 (Fed.Cir. 1999). On September 26, 1985, Trevor received a DPT vaccination. The special master found that, within three days of receiving this vaccination, Trevor suffered a seizure in addition to localized redness, heat, swelling at the vaccine site, a low fever, and some

fussiness. Over the course of time, Trevor continued to suffer seizures. Today, Trevor is mentally retarded and significantly delayed with autistic features.

Pursuant to § 11 of the Vaccine Act, a petition for relief on Trevor's behalf was filed with this court on September 25, 1990. Trevor's case was one of several TS cases before the special master. Initial hearings were held on October 21, 1991, and November 16, 1994. Testifying for petitioners at the 1991 hearing was Dr. Manuel Gomez of the Mayo Clinic. Dr. Gomez testified that, if Trevor's seizure onset occurred within three days of his DPT vaccination, it was very likely that the vaccine precipitated or triggered his seizures. As a result of the 1991 and 1994 hearings, the special master held, in an unpublished decision issued on December 28, 1994, that "the onset of Trevor's seizures was on-Table after his DPT vaccination." *Hulbert v. Sec'y of the Dep't of HHS,* No. 90–1335V, 2001 WL 258060, at *1 (Fed.Cl. Spec.Mstr. Feb. 20, 2001).

The term "on-Table" refers to the statutory presumption of causation created by §§ 11 and 14 of the Vaccine Act. Section 11 sets forth the requirements of a petition for relief, thus establishing the elements of a prima facie case entitling petitioners to relief. One of these elements is causation, and § 11 provides that the prima facie burden regarding causation may be satisfied by providing:

> an affidavit, and supporting documentation, demonstrating that the person who suffered such injury . . .
>
> (C)(i) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine referred to in subparagraph (A) . . ., and the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition . . . occurred within the time period after vaccine administration set forth in the Vaccine Injury Table . . . .

42 U.S.C. § 300aa–11. The Vaccine Injury Table is set forth in § 14. "[F]or purposes

---

1. For convenience, we sometimes hereafter shorten references to sections of the Vaccine Act to the portion following the hyphen. In this opin-

ion, citations to the Vaccine Act are to the current United States Code.

of receiving compensation under the Program," § 14 establishes a three-day time period, after administration of the DPT vaccine, for onset of a residual seizure disorder. 42 U.S.C. § 300aa–14. Special Master Millman's 1994 decision that the onset of Trevor's seizures was "on-Table," therefore, created a rebuttable presumption in favor of petitioners that the DPT vaccine had, in fact, caused significant aggravation of Trevor's TS. Thus, in the absence of any evidence to the contrary, petitioners were entitled to relief under the Vaccine Act, and the special master so held. A final decision was not entered, however, because damages had yet to be determined.

In March 1995, respondent presented new evidence to the court in all of the pending TS cases. Included within that new evidence was a new article co-authored by Dr. Manuel Gomez and a letter written by Dr. Gomez— the same Dr. Gomez who had testified for petitioners in 1991. Dr. Gomez's letter stated that some of his 1991 testimony was "confusing or meaningless, if not erroneous." On the basis of this new evidence, Special Master Millman granted respondent's motion to reconsider her holdings in all TS cases and to require additional expert testimony. The special master then consolidated the cases and conducted TS omnibus proceedings.

In June 1997, Dr. Gomez testified at the TS omnibus trial. Dr. Gomez testified that he had reconsidered some of his earlier opinions and that he was no longer of the opinion that the DPT vaccine causes or triggers seizure onset in TS children. Rather, seizure onset and outcome were due to cortical tubers. This testimony conflicted with the testimony he had given in 1991.

As a result of the TS omnibus proceedings, the special master issued an omnibus decision denying compensation in two test cases. *Barnes v. Sec'y, Dep't of H.H.S.*, Nos. 90–1334V, 91–1555V, 1997 WL 620115 (Fed.Cl. Spec.Mstr. Sept. 15, 1997). Specifically, the special master held that "[r]espondent has successfully rebutted petitioners presumption of significant aggravation of preexisting TS from DPT vaccine by proving that TS caused in fact both petitioners' onset of seizures and

current condition ...." *Barnes,* 1997 WL 620115, at \*34.

Shortly after issuing her omnibus decision, Special Master Millman issued an order pertaining specifically to this case. This order, in relevant part, stated,

> Pursuant to my holding in the TS Omnibus Decision, I have examined my decision that petitioners are entitled to compensation in this case, dated December 28, 1994.
>
> Trevor experienced more than afebrile [i.e., without fever] seizures within three days of his DPT vaccination .... The court cannot determine at this time whether Trevor's swelling at the vaccine site, low fever, and fussiness are merely a transient reaction to DPT or part of a more involved reaction ..., and needs expert testimony to reach a conclusion.

Order of Sept. 24, 1997, at 1–2.

In order to obtain the expert testimony referred to in the special master's September 24, 1997, order, an evidentiary hearing was held on January 28, 2000. At issue before the special master was whether the DPT vaccine caused significant aggravation of Trevor's TS resulting in seizures, thus entitling petitioners to relief under the Vaccine Act, or whether the other symptoms suffered by Trevor were merely benign and transient reactions to his vaccination, unrelated to Trevor's seizures. Dr. Gomez did not testify at this hearing. The expert witness for petitioners was Dr. Marcel Kinsbourne, and the expert witness for respondent was Dr. Max Wiznitzer.

On February 20, 2001, Special Master Millman issued the decision now under review. The special master found, as a matter of fact, that the DPT vaccine did not significantly aggravate Trevor's TS and thereby cause the onset of his seizures. *Hulbert,* 2001 WL 258060, at \*9. She also found that the other post-vaccination symptoms had no relationship to his seizures. *Id.* She based these findings on the testimony of Dr. Wiznitzer. *Id.* While denying petitioners' motion to strike the prior adverse testimony of Dr. Gomez, the special master nevertheless specifically stated that her holding was restricted to "the evidence produced at [the January 28, 2000,] hearing." *Id.* at \*5 n. 4.

## DISCUSSION

We review the special master's decision under the standard articulated in 42 U.S.C. § 300aa–12(e) and can only set aside findings of fact or conclusions of law of the special master that we find to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e). With this standard as our guide, we now consider petitioners' three objections to the special master's decision.

### I.  Objection One—The Burden of Proof

■ Petitioners' first objection is that the special master improperly shifted the burden of proof to them and denied them the benefit of the statutory presumption of causation created by §§ 11 and 14 of the Vaccine Act. We reject this objection.

Petitioners argue that "[t]he harm in the special master's ... reasoning is that in the absence of petitioner's impeachment of the government's evidence, the special master always presumes the government's mere opinion evidence competent to defeat the Table presumption of causation," thus depriving petitioners of their statutory presumption of causation. Pet'rs' Mem. at 12. The decision by the special master directly contradicts this argument. The special master explicitly based her decision on the evidence of Dr. Wiznitzer, and there is no indication that she "always presumes" that respondent's evidence regarding TS is correct. Furthermore, the special master acknowledged the petitioners' entitlement to the statutory presumption and, accordingly, respondent's expert witness testified first at the evidentiary hearing. *Hulbert,* 2001 WL 258060, at *2. The mere fact that the special master found respondent's expert more credible does not mean that petitioners were deprived of their statutory presumption.

Additionally, the bare fact that the special master has ruled against petitioners in several TS cases is insufficient for us to find that she improperly shifted the burden of proof to petitioners. Petitioners would need to point to some evidence, in this case, that the special master simply presumed that respondent's witness was correct. However, the special master explicitly stated:

This case concerns the testimony of two experts dealing with the issue presented in the Order of September 27, 2000: whether Trevor's post-DPT symptoms of swollen, hot, and red vaccine site, mild irritability, and low-grade fever were more than a transient reaction. The far more credible evidence comes from respondent's expert, Dr. Wiznitzer, who is a clinical pediatric neurologist, a teacher of pediatric neurology, an examiner for the American Board of Psychiatry and Neurology, and a reviewer for peer-reviewed medical journals. His specialty is autism, one of the issues in this case. He treats and has treated TS patients. Dr. Kinsbourne, on the other hand, has not practiced clinical medicine for many years and teaches non-medical subjects at the New School for Social Research ....

*Id.* at *7. We are in no better position to assess the witnesses' credibility than Special Master Millman. The special master found Dr. Wiznitzer's evidence more credible and based her decision on it accordingly.

Respondent had the right under § 13(a)(1)(B) of the Vaccine Act to demonstrate, by a preponderance of the evidence, that Trevor's illness, disability, injury, or condition was "due to factors unrelated to the administration of the vaccine." 42 U.S.C. § 300aa–13(a)(1)(B). Having made this demonstration, the burden of impeaching respondent's evidence fell on petitioners. Special Master Millman correctly articulated the burdens imposed on the parties:

The issue is not whether respondent's evidence rules out DPT as a possibility, but whether a known factor unrelated, i.e., TS, is more likely than not the cause of Trevor's seizures and current condition. Once respondent proves that more likely than not TS is the cause of Trevor's seizures and current condition [thereby overcoming the statutory presumption of causation], petitioners need to impeach that evidence, not assert that DPT might possibly be the cause.

*Id.* at *6.

Petitioners apparently believe that, because Trevor demonstrated other symptoms besides seizures, respondent's burden was

heavier in this case than in other TS cases. *See* Pet'rs' Mem. at 10, 21. The burden on respondent, however, is the same here as in the other TS cases—namely, to prove by a preponderance of the evidence that TS was the in-fact cause of the alleged injuries. The petitioners quote a phrase from a Federal Circuit opinion in another TS case, "TS, not DPT," as support for their argument that it was the government's burden to prove DPT could not possibly have been the cause of Trevor's condition. Petitioners have taken this phrase completely out of context. The entire sentence from which this phrase is taken reads, "After weighing voluminous evidence on the relationship between seizures and both TS and the DPT vaccine, the special master concluded that where a TS child receives DPT vaccine and remains perfectly normal (in temperature, eating, sleeping, affect, and activity) but has a seizure within three days, TS, not DPT, is the cause in fact of that seizure." *Hanlon*, 191 F.3d at 1347. Petitioners have pointed to no evidence that this same process of weighing evidence was not employed by Special Master Millman in this case, and, as noted above, her decision indicates that this process was employed.

Petitioners' citation to *Rose v. Clinchfield Coal Co.*, 614 F.2d 936 (4th Cir.1980), is also inapposite. In that case, the court held that the Benefits Review Board of the United States Department of Labor had erred in denying the petitioner compensation under the black lung benefits provisions of the Federal Coal Mine Health and Safety Act of 1969, *as amended*, 30 U.S.C. §§ 801–962 (1976 & Supp. IV 1980). The basis for this holding was the Benefits Review Board's failure to "impose on the respondents the burden of rebutting [the statutory] presumption" created by 30 U.S.C. § 921(c)(4)(B). *Rose*, 614 F.2d at 939. The referenced code section provided that a claim for benefits under the Coal Act could be defeated upon "the respondents' production of substantial evidence that the decedent's 'impairment did not arise out of, or in connection with, employment in a coal mine.'" *Id.* (citing 30 U.S.C. § 921(c)(4)(B); 20 C.F.R. § 410.454(b)(2)). In the case at bar, the special master, unlike the Benefits Review Board in *Rose*, applied the burden in precise-

ly the manner prescribed by the relevant statute—here, the Vaccine Act. For this reason and for the other reasons stated, petitioners' first objection is rejected.

## II. Objection Two—The Testimony of Dr. Gomez

■ Petitioners argue that the special master's denial of their motion to strike the testimony of Dr. Manuel Gomez because he had previously been their witness constitutes reversible error. We disagree.

It is somewhat unclear from petitioners' memorandum which testimony of Dr. Gomez they allege was improperly considered. For the sake of completeness, we shall consider both the evidence of Dr. Gomez relied upon by the special master in deciding to reconsider her 1994 decision of entitlement and the evidence of Dr. Gomez presented at the TS omnibus hearing.

The evidence of Dr. Gomez that the special master relied upon in deciding to reconsider her 1994 decision consists of an article co-authored by Dr. Gomez and a letter written by Dr. Gomez. As stated previously, this evidence conflicted with the evidence given by Dr. Gomez at the 1991 hearing in this case.

Petitioners argue that the Federal Circuit and this court's prior determination in another TS case that the use of Dr. Gomez's testimony was proper is inapplicable here because that determination turned on the fact that, in that case, Dr. Gomez had never been retained as the petitioners' expert. *See Hanlon*, 191 F.3d at 1349–50; *Hanlon v. Sec'y of HHS*, 40 Fed.Cl. 625, 632 (1998). However, petitioners read this court's holding in *Hanlon* too narrowly. In *Hanlon*, this court stated,

Additionally, we firmly believe that if petitioners' counsel realized that the special master was going to rely on Gomez's past testimony, which favored petitioners, and knew that Gomez's opinion had changed materially based on newer studies or a change in the prevailing medical opinion, *petitioners' counsel* would have had an ethical duty to bring this to the special master's attention.

Courts are engaged in a search for truth no matter who calls the witness.

*Hanlon*, 40 Fed.Cl. at 632 (emphasis added). We agree with this proposition: if Dr. Gomez changed his mind, the court needed to know that fact. It matters little whose counsel informed the court. Furthermore, this evidence of Dr. Gomez was used merely to support the special master's determination to reconsider her earlier ruling; it was not considered in the final decision.

Dr. Gomez's testimony at the TS omnibus hearing was also not considered in the final decision. The special master specifically stated, "[N]either side produced Dr. Gomez at trial on January 28, 2000, and the undersigned restricts its holding to the evidence produced at that hearing." *Hulbert*, 2001 WL 258060, *5 n. 4. The special master also stated, "Dr. Wiznitzer's testimony that TS is the cause of Trevor's seizure disorder, autism, mental retardation, and behavioral difficulties is more credible that Dr. Kinsbourne's." *Id.* at *9. Having based her causation finding on the evidence presented by Dr. Wiznitzer, petitioners cannot argue that the special master's denial of their motion to strike Dr. Gomez's testimony constitutes reversible error.

### III. Objection Three—Dr. Wiznitzer's Evidence Was Speculative and Unprovable

 Petitioners' third objection challenges the legal sufficiency of respondent's evidence and invites us to find that Dr. Wiznitzer was not a credible witness. This we decline to do.

Petitioners characterize Dr. Wiznitzer's testimony as "fantastic," "unverifiable," "speculation," and "circular." However, we are in no better a position than Special Master Millman to determine whether Dr. Wiznitzer was a credible witness. Special Master Millman, as fact-finder, was confronted with the issue of deciding which of two experts to believe. She believed respondent's expert because she found him to be more "credible." *Id.* at *7, *9. As previously noted, Dr. Wiznitzer is a clinical pediatric neurologist, a teacher of pediatric neurology, an examiner for the American Board of Psychiatry and Neurology, and a reviewer for peer-reviewed medical journals. Dr. Kinsbourne has not practiced clinical medicine for many years and teaches non-medical subjects at the New School for Social Research. We have no basis to hold that Special Master Millman's finding that Dr. Wiznitzer was a more credible witness than Dr. Kinsbourne was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Petitioners' third objection is rejected.

### CONCLUSION

Petitioners' Motion for Review is denied.