**Rita J. MITCHELL, Petitioner,**

v.

**OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.**

No. 93–1923.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1993.

Decided May 26, 1994.

Theresa Chmara (argued), David W. De-Bruin, Jenner & Block, Washington, DC, for petitioner.

Marta Kusic, Jeffrey S. Goldberg, Office of the Sol., Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, DC, for Office of Workers Compensation Programs.

Wayne Reynolds (argued), Belleville, IL, for Old Ben Coal Co.

Steven D. Breeskin, Dept. of Labor, Office of the Sol., Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Benefits Review Bd.

Before LAY,* RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Coal miner Charles Mitchell applied for black lung benefits on June 26, 1980, shortly before his death in August of that year. Petitioner Rita Mitchell, his widow, timely filed a claim for survivor's benefits. That consolidated claim has been before the Department of Labor and the courts ever since. Mrs. Mitchell now appeals the ruling of the Benefits Review Board ("the Board") affirming the decision of the Administrative Law Judge ("the ALJ") denying benefits on the basis that the statutory presumption was not invoked. For the reasons that follow, we reverse the decision of the Board and remand with the direction that the Board order that benefits be paid.

* The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

I

BACKGROUND

A. *Facts*

Charles Mitchell worked for the CB & Q Railroad for 23 years, between 1942 and 1968. He cleaned railroad cars at the site of the Old Ben Coal Company ("Old Ben") coal mine. In performing this work, he was supervised by Old Ben. He worked directly for Old Ben from 1971 until 1980 in its underground coal mines. In February 1979, an x-ray of Mr. Mitchell's chest was sent to the National Institute for Occupational Safety and Health ("NIOSH") for analysis. NIOSH notified Department of Labor's Chief of the Health Division of the Coal Mine Safety and Health Administration that "[t]he interpretation of the X-ray by a physician qualified under the Act indicates evidence of Category I Simple Pneumoconiosis (ILO–U/C Classification)."[1] Director's Ex. 15 at 1. In November 1979, Old Ben transferred Mr. Mitchell to the position of bottom cager in the mines, a job with less exposure to coal dust. However, health difficulties caused him to stop working on January 18, 1980. Shortly thereafter, he underwent surgery for cancer of the colon and pelvis. Mr. Mitchell died on August 1, 1980; the death certificate stated that the cause of death was cancer.

B. *Medical Evidence*

1. RADIOGRAPHY. Three x-rays of Mr. Mitchell's chest were taken and read for evidence of black lung disease. The first,

taken February 14, 1979, was described above. Dr. J.S. Gordonson, a Board-certified radiologist and B-reader for NIOSH,[2] reported that the x-ray revealed "evidence of Category 1 Simple Pneumoconiosis." Director's Ex. 15 at 1. Five radiologists retained by Old Ben later read the x-ray as negative for pneumoconiosis. Old Ben Ex. 1, 2 (reports of B-readers Renn and Morgan).

The January 26, 1980 x-ray was taken when Mr. Mitchell was in the hospital for cancer. Six radiologists, five of whom were retained by Old Ben, read that x-ray. None of the readings was positive for pneumoconiosis; however, three of the Old Ben readers found evidence of "granulomata."[3] Old Ben Ex. 3–7. Also, Board-certified radiologist Dr. T.A. Minetree found "evidence of old inflammatory disease." Director's Ex. 10 at 5.

The February 6, 1980 x-ray, taken during Mr. Mitchell's hospitalization, resulted in the same reading: Dr. Minetree reported evidence of an old inflammatory disease, Director's Ex. 10 at 4, and three of the five Old Ben readers found evidence of granulomata. Old Ben Ex. 8–12.

2. MEDICAL OPINIONS. The record contained the reports of only two physicians. Dr. Fox, Mr. Mitchell's treating physician during his hospitalization for cancer, submitted a report on May 27, 1981, at the Department of Labor's request. He stated that Mr. Mitchell died of cancer of the bowel. Although the doctor believed that he was "not

---

1. Clinical pneumoconiosis exists in two forms, simple and complicated. In order to establish clinical pneumoconiosis by x-ray, the film must be classified according to the accepted system as either Category 1, 2, or 3 simple pneumoconiosis or Category 1, 2, or 3 complicated pneumoconiosis. 20 C.F.R. § 410.428(a). The simple form is caused by coal dust, and the categories refer to the profusion of small rounded opacities in the lung fields visible on an x-ray, with Category 1 indicating the least profuse. *Drummond Coal Co. v. Freeman*, 733 F.2d 1523, 1525 n. 3 (11th Cir.1984) (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976)). Simple pneumoconiosis is embraced within the broad definition of the term "pneumoconiosis" in the regulations at 20 C.F.R. § 410.401(b)(1). *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 n. 4 (4th Cir.1980).

2. NIOSH has established the standards for rating the proficiency of physicians who interpret x-rays, and it certifies them as readers. *See Sharpless v. Califano*, 585 F.2d 664, 666 n. 5 (4th Cir.1978). The most highly qualified is the B-reader, "a physician who has demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality and in the use of the ILO-u/c classification for interpreting chest roentgenograms for pneumoconiosis and other diseases." 20 C.F.R. § 718.202(a)(1)(ii)(E).

3. "Granulomata" refers to the condition of having "nodular inflammatory lesions, usually small or granular, firm, persistent, and containing compactly grouped mononuclear phagocytes." *Stedman's Medical Dictionary* 606 (5th Ed.1982); *see also Mitchell v. Director, O.W.C.P.*, 855 F.2d 485, 487 n. 1 (7th Cir.1988).

in a position to have firm knowledge as to the extent of his black lung disease if he had this," he reported that Mr. Mitchell "certainly had pulmonary compromise." Director's Ex. 10 at 1. Dr. Fox had also stated in an earlier report that Mr. Mitchell suffered from "chronic obstructive pulmonary disease" in addition to cancer. Director's Ex. 10 at 2.

Dr. Barkdull, Mr. Mitchell's treating family physician for more than 25 years, also submitted for the ALJ's review Dr. Gordonson's reading of the February 1979 X-ray, the NIOSH notification letter, and the form signed by Mr. Mitchell exercising his option to transfer to a less dusty area of the mine. Dr. Barkdull's report of August 13, 1984 stated: "As you will notice [Mr. Mitchell] was diagnosed as having definite pneumoconiosis verified by x-ray. It is my medical opinion that Mr. Mitchell was totally disabled due to this condition." Claimant's Ex. 1 at 2.

3. LAY OPINIONS. Mrs. Mitchell testified that her husband's breathing difficulties began around 1974, shortly after he began working underground in the mines, and that the problem became progressively worse until he needed a breathing mask in the mines. Tr. 15. She described his shortness of breath and his frequent spitting, coughing and choking. *Id.* Mr. Mitchell's supervisor Tom McKie also testified that Mr. Mitchell would "violently cough, oh, for forty seconds or so, and when he would turn around he would be flushed." Tr. 34. He also mentioned that Mr. Mitchell smoked. Tr. 37.

## C. *Procedural History*

The initial determination of Mr. Mitchell's application and Mrs. Mitchell's claim for survivor's benefits was a denial of eligibility—first by the Director of the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor, and then by the ALJ and the Board. However, we reversed the Board's first affirmance of the ALJ's determination that Mrs. Mitchell was not entitled to benefits because Mr. Mitchell had not been a "miner" for at least fifteen years as the statute required. *Mitchell v. Director, O.W.C.P.*, 855 F.2d 485 (7th Cir.1988). After

reviewing the statutory and regulatory definitions of "miner" [4] and the caselaw interpretations, we concluded that the ALJ had erred in that determination. We held that Mr. Mitchell was in fact a "miner" under the applicable regulations and therefore that Mrs. Mitchell was entitled to the opportunity to establish the rebuttable presumption for pneumoconiosis. We remanded the case to the ALJ for further factfinding on the question whether Mr. Mitchell suffered from a totally disabling respiratory or pulmonary impairment.

On remand, the ALJ again concluded that benefits should be denied on the ground that the existence of pneumoconiosis was not established by x-rays or by well-reasoned medical opinions. Order of June 8, 1989, R.145–49. With respect to the X-rays, the ALJ noted that one x-ray had been read as positive by a B-reader, but that several other radiologists had read that x-ray and the others as negative for pneumoconiosis. The ALJ concluded that "the existence of pneumoconiosis was not established by radiography." R.147. The ALJ accorded no weight to the two available medical reports. He discounted Dr. Fox's report because the physician was not certain that Mr. Mitchell had black lung disease and did not describe the tests indicating Mr. Mitchell's pulmonary compromise. An earlier report by Dr. Fox, which had diagnosed chronic pulmonary disease, was also given no weight. The ALJ was of the view that the record contained no evidence of the basis of the diagnosis, the severity of the disability, or the causal relationship of the disease to coal mine employment rather than to Mr. Mitchell's "significant history of smoking." R.148. Dr. Barkdull's letter was also discounted by the ALJ. He noted that Dr. Barkdull had relied on one positive x-ray reading, but recited no knowledge that this x-ray had been read as negative by two B-readers and that the other x-rays had been read as negative by "well-qualified" readers. The ALJ found that the death certificate listed the cause of death as cancer, with no indication of another disabling impairment. Moreover, the lay witness' testimony described respiratory difficulties that could have been attributable to the cancer. R.148.

---

4. *See* 30 U.S.C. § 902(d); 20 C.F.R. § 725.-202(a).

Before the Board, Mrs. Mitchell submitted that the ALJ had committed error in requiring that she prove the existence of pneumoconiosis and causality as part of her invocation of the presumption permitted by § 718.-305. The Board held that, in cases such as this, § 718.305 provides a rebuttable presumption that a miner is totally disabled by pneumoconiosis if he was employed in a mine or comparable surface activity for fifteen years and establishes, under the criteria set forth in § 718.204(c), the existence of a totally disabling respiratory impairment. "As claimant contends," wrote the Board, "if the Section 718.305 presumption is invoked, she need not establish the existence of pneumoconiosis separately and may avail herself of the Section 718.203(b) presumption." [5] Board Dec. of Mar. 19, 1993, R.5.

Nevertheless, the Board determined that the ALJ's error did not alter the result because he "made affirmable findings that claimant failed to establish a total disability respiratory impairment pursuant to Section 718.204." *Id.* In the Board's view, the ALJ gave a proper reason for rejecting the two doctors' medical opinions, and, therefore, "any error in his weighing of the medical evidence is harmless." *Id.* It also noted that the only cause of Mr. Mitchell's death on the death certificate was cancer and that, in the absence of another cause, the ALJ properly inferred that the miner did not suffer from a totally disabling ailment. R.7.

## II

## ANALYSIS

### A. *Statutory Framework*

Mr. Mitchell's application for disability benefits under the Black Lung Benefits Act,

30 U.S.C. §§ 901–945, was filed on June 26, 1980. Any claim filed after March 31, 1980 is administered by the Department of Labor and is governed by the permanent Part C regulations found at 20 C.F.R. § 718.201 *et seq. Mullins Coal Co. v. Director, O.W.C.P.,* 484 U.S. 135, 139, 108 S.Ct. 427, 430, 98 L.Ed.2d 450 (1987); *see also Bracher v. Director, O.W.C.P.,* 14 F.3d 1157, 1158 (7th Cir.1994). Section 921(c)(4) of the Act [6] and its accompanying regulations (20 C.F.R. § 718.305(a)) allow a petitioner a presumption of pneumoconiosis if the claimant demonstrates (1) coal mine employment of more than 15 years, and (2) evidence of a totally disabling respiratory or pulmonary impairment. Section 718.204 of the regulations sets forth the criteria for determining the existence of a totally disabling impairment. If the presumption is established, it may be rebutted by proof (1) that the coal miner did not have pneumoconiosis or (2) that his impairment did not arise out of coal mine employment. 30 U.S.C. § 921(c)(4).

### B. *Standard of Review*

■ Although the case on appeal is a final decision of the Benefits Review Board, we review the benefits determination of the ALJ, rather than the Board, to determine whether it is rational, supported by substantial evidence, and consistent with the governing law. *Old Ben Coal Co. v. Battram,* 7 F.3d 1273, 1275 (7th Cir.1993). Without reweighing the evidence or substituting our judgment for that of the ALJ, we nevertheless carefully review the record and the ALJ's findings. *Id.* (citing *Meredith v. Bow-*

**5.** 20 C.F.R. § 718.203(b) provides:

If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

**6.** 30 U.S.C. § 921(c)(4), in pertinent part, states:

(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's ... claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3)

of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.... The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. .

This provision is repeated in the Subpart C regulations at 20 C.F.R. § 718.305(a).

*en,* 833 F.2d 650, 653 (7th Cir.1987)). It is the duty of the ALJ to consider all relevant medical evidence; he "cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Id.* (citing *Wetherill v. Director, O.W.C.P.,* 812 F.2d 376, 382 (7th Cir.1987)). We then consider the Board's review of the ALJ decision:

> "The Review Board has the identical scope of review when sitting as an appellate panel reviewing decisions of the ALJ." Our review of the Board's decision is limited to whether the Board adhered to its scope of review and to whether the Board committed an error of law.

*Shelton v. Old Ben Coal Co.,* 933 F.2d 504, 506 (7th Cir.1991) (citations omitted).

C. *The Rebuttable Presumption: 20 C.F.R. § 718.305*

1.

In our prior *Mitchell* decision we concluded, as a matter of law, that Mr. Mitchell had been a "miner" for more than fifteen years. We also made clear that Mrs. Mitchell would be entitled to the benefit of the § 718.305 presumption if the other evidence of record demonstrates the existence of a totally disabling respiratory or pulmonary impairment. Of the five criteria to be applied in evaluating the existence of a totally disabling impairment under § 718.204, only (c)(4) applies in this case.[7]

> (4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, ... total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section.

20 C.F.R. § 718.204(c)(4).

Mrs. Mitchell contends that she carried her burden of proof by presenting the evidence of "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques," who concluded that her husband's respiratory or pulmonary conditions prevented him from engaging in employment. However, the ALJ refused to give any weight to the opinions of the two physicians. Mrs. Mitchell submits that, in making that determination, the ALJ erroneously required her to prove the existence of pneumoconiosis rather than of a totally disabling pulmonary impairment. She also contends that the ALJ placed upon her the burden of showing that her husband's disability arose out of his coal mine employment.

We agree that the ALJ erred when evaluating the physicians' considered opinions. First, as the Board acknowledged, he required that the evidence (including that submitted by the physicians) provide proof of pneumoconiosis, rather than of a completely disabling impairment. This methodology was erroneous because Mrs. Mitchell was not attempting to qualify for benefits by proving *directly* that her husband was totally disabled by pneumoconiosis resulting from his coal mine employment. Rather than taking that more difficult route, she instead availed herself of the presumption that her husband was totally disabled due to pneumoconiosis because he was employed as a coal miner for 15 years and suffered from a totally disabling pulmonary impairment.[8] Once the claimant

---

7. Under 20 C.F.R. § 718.204(c), a miner's total disability is established if the evidence meets the standards of any of the five criteria presented. Categories 1 through 3 concern evidence of specific tests that were never given to Mr. Mitchell. Category 5, which allows lay testimony when the miner is deceased and there is no medical or other relevant evidence, is likewise not pertinent in this case. Thus the appropriate test for measuring Mr. Mitchell's disability is category 4, which relies upon a physician's reasoned medical judgment to prove total disability.

8. The presumption of pneumoconiosis provided at 20 C.F.R. § 718.305 is available to claimants like Mr. and Mrs. Mitchell who filed their claims before January 1, 1982. Board Dec. of Mar. 19, 1993, R.5. Unless the miner was found to be entitled to benefits as a result of a pre–1982 claim, "benefits are payable on survivors' claims filed on or after January 1, 1982, only when the miner's death was due to pneumoconiosis, except where the survivor's entitlement is established pursuant to § 718.306 of this part on a claim filed prior to June 30, 1982." 20 C.F.R.

qualifies for the presumption of pneumoconiosis by establishing both prongs of the proof, the burden of rebutting that presumption shifts to the employer, who must show a lack of pneumoconiosis or a lack of relationship between disability and employment.

The ALJ's misplaced preoccupation with direct proof of pneumoconiosis is evident at several points in his decision. In discounting Dr. Fox's report, he emphasized the fact that the physician "was not certain that the miner had pneumoconiosis, and did not indicate the tests or findings to support his conclusions." He also refused to accept Dr. Barkdull's report, because the physician referred only to the 1979 x-ray diagnosing simple pneumoconiosis and not to the two 1980 x-rays that had been read as negative for pneumoconiosis. Indeed, in assessing the x-rays, the ALJ placed great emphasis on whether they established the existence of pneumoconiosis and gave little weight to whether they were relevant to establishing the existence of a totally disabling pulmonary impairment. The ALJ found that, because there was only one positive reading (by the NIOSH B-reader) and fourteen negative readings by several radiologists, "the existence of pneumoconiosis was not established by radiography." To the extent that the ALJ failed to credit the reports of the physicians or to give weight to the x-rays simply because they did not establish the *existence of pneumoconiosis*, the ALJ required too much.

The ALJ also required Mrs. Mitchell to prove that coal mine employment caused the claimant's totally disabling pulmonary impairment. The ALJ rejected Dr. Fox's diagnosis that Mr. Mitchell had "chronic obstructive pulmonary disease" because the opinion did not state "whether it was caused by coal mine employment." R.4. He also discounted Mrs. Mitchell's testimony because she did not indicate that her husband's disability was caused by his coal mine employment.

By requiring this proof of causation, the ALJ erroneously denied Mrs. Mitchell the benefit of the presumption to which she was entitled. The claimant's showing that Mr. Mitchell had worked more than fifteen years in the mines and had become totally disabled from chronic obstructive pulmonary impairment is sufficient to trigger the presumption set forth in § 921(c)(4). The claimant need not demonstrate a causal connection between Mr. Mitchell's disability and his coal mine employment to invoke the presumption.[9] Instead, it is the employer's burden to rebut the presumption by proving that such a causal connection did not exist. *See Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939–40 (4th Cir.1980) (holding that claimant prevailed because she attained the benefit of the presumption and rebuttal was precluded, given uncontested fact that claimant did suffer from simple pneumoconiosis). The ALJ failed to credit Mrs. Mitchell with the benefit of the presumption and failed to impose on Old Ben the burden of rebutting the presumption.[10]

§ 718.1. *See Freeman United Coal Mining Co. v. O.W.C.P.*, 999 F.2d 291, 292 (7th Cir.1993).

**9.** As the Board noted, because Mr. Mitchell worked for ten or more years in the coal mines and suffered from pneumoconiosis, the § 718.302 rebuttable presumption has been met. Subsections 302 and 305 are interrelated presumptions: A fifteen-year underground miner demonstrating that he suffered from a totally disabling pulmonary impairment is given the benefit of the § 718.305 rebuttable presumption that he suffered from pneumoconiosis, and § 718.302 presumes that his pneumoconiosis arose from coal mine employment. *See Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1476 (10th Cir.1989) (stating that claimant entitled to § 718.305 presumption also receives the § 718.302 presumption).

**10.** Mr. Mitchell suffered from cancer at the time he ceased working and applied for benefits.

There is no indication in the record that the cancer was the cause of his pulmonary problems. *Peabody Coal Co. v. Director, O.W.C.P.*, 778 F.2d 358, 363 (7th Cir.1985) (stating that "concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act"); *see also Patrick v. Old Ben Coal Co.*, 926 F.2d 1482, 1490 (7th Cir.1991) (finding substantial medical evidence to support ALJ's finding that claimant's total disability was caused entirely by cancer and not at all by pneumoconiosis); *cf. Compton v. Inland Steel Coal Co.*, 933 F.2d 477, 480 (7th Cir.1991) (stating that pneumoconiosis need not be the only cause of disability: "a miner need show only that he possesses a total pulmonary disability which is necessarily due in part to pneumoconiosis."); *Hawkins v. Director, O.W.C.P.*, 907 F.2d 697, 704 (7th Cir.1990) (holding that "a claimant must show that pneumoconiosis is a

### 2.

■ Although it recognized that the ALJ had not given Mrs. Mitchell the full benefit of the presumption to which she was entitled, the Board was of the view that the error was of no consequence because the ALJ had properly concluded that the reports of the physicians were unworthy of belief with respect to the existence of a totally disabling pulmonary disease. On this point, we find ourselves in respectful disagreement with the Board. It is not at all clear to us that the ALJ's preoccupation with the question of whether pneumoconiosis existed did not skew his ultimate assessment of the physicians' reports. More fundamentally, however, the ALJ failed to assess properly the adequacy of the physicians' reports with respect to the existence of a totally disabling pulmonary disease. In this respect, we do not believe that the ALJ was justified in rejecting out of hand the diagnosis of Dr. Barkdull, Mr. Mitchell's treating physician for over 25 years. The physician had properly relied on his own knowledge of Mr. Mitchell's medical history over the years and on the 1979 x-ray read by the NIOSH B-reader (a highly qualified and completely disinterested radiologist), see Mitchell, 855 F.2d at 491 n. 9, to determine that Mr. Mitchell was totally disabled due to a pulmonary condition.[11] Nor could the opinion of Dr. Fox, the physician treating Mr. Mitchell during his hospitalizations over an eighteen-month period, be so summarily rejected. While this physician was understandably concerned primarily with Mr. Mitchell's cancer, he nevertheless expressed the opinion that Mr. Mitchell "certainly had pulmonary compromise."[12] In fact, Dr. Fox's diagnosis six months prior to Mr. Mitchell's death had included both cancer and chronic obstructive pulmonary disease. "[I]t is the attending physician who is best qualified to determine whether pneumoconiosis causes a miner's disability." Compton, 933 F.2d at 482.

We believe that the physicians' medical opinions are sufficiently reasoned to be relevant to the inquiry of whether Mr. Mitchell was disabled on account of a pulmonary impairment, even without elaborations on the conclusions. See Poole v. Freeman United Coal Mining Co., 897 F.2d 888, 893 (7th Cir.1990) (upholding a physician's report as reasoned even though the physician did not elaborate on the reasons for his diagnosis on the Department of Labor form which required an explanation). The lack of detail in the letters does not indicate that the doctors' opinions were not well-reasoned medical judgments. The ALJ's rejection of these two physicians' opinions was, under the circumstances presented here, improper. The ALJ was also obliged to weigh all of the medical evidence in determining the existence of a pulmonary disease. Even though only one of the x-ray readings established the existence of pneumoconiosis, a majority of the x-ray readings indicated granulomata and old inflammatory disease. These data were relevant to the issue of whether a totally disabling pulmonary disease was present.

necessary, but need not be a sufficient, cause of his or her total disability"); Shelton v. Director, O.W.C.P., 899 F.2d 690, 693 (7th Cir.1990) (same).

11. We recognized in our earlier opinion the possibility that Dr. Barkdull's finding of total disability, based on Dr. Gordonson's "medically acceptable" reading of the February 1979 chest x-ray, establishes that Mr. Mitchell was totally disabled by a pulmonary impairment rather than by pneumoconiosis. Mitchell, 855 F.2d at 491 n. 9 (quoting 20 C.F.R. § 718.204: "[T]otal disability may ... be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's ... pulmonary condition ... prevented the miner from engaging in employment.").

12. In our earlier opinion we stated that "Dr. Fox's testimony creates at least a colorable claim that Mr. Mitchell was totally disabled by a respiratory or pulmonary impairment." We also commented that there was perhaps merit to the argument that "Dr. Fox's diagnosis of chronic obstructive pulmonary disease was sufficient to prove that Mr. Mitchell had pneumoconiosis."

In Old Ben Coal Co. v. Prewitt, 755 F.2d 588, 591 (7th Cir.1985), we said that "'chronic obstructive pulmonary disease,' ... whether or not technically black lung disease (pneumoconiosis), fits the statutory definition, which is broader than the medical [definition]." Further, under 20 C.F.R. § 718.203(b), Mrs. Mitchell is entitled to a presumption that Mr. Mitchell's pneumoconiosis arose out of coal mine employment. 855 F.2d at 491 n. 7.

■ The ALJ improperly rejected the medical evidence of pulmonary impairment by the two treating physicians, despite the absence of countervailing evidence. *See Wetherill v. Director, O.W.C.P.,* 812 F.2d 376, 382 (7th Cir.1987) (setting forth the requirements that the ALJ consider all relevant medical evidence and not disregard the medical conclusions of a qualified physician absent countervailing clinical evidence or a valid legal basis for doing so); *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 223 (7th Cir.1982) (holding that it was error to refuse to credit a physician's report based on examination and test results in the absence of contradictory evidence). A doctor's opinion cannot be rejected because it was based on tests that were interpreted differently by others. *Poole,* 897 F.2d at 893. By discrediting the well-reasoned medical opinions of Drs. Fox and Barkdull, the ALJ substituted his own judgment for that of the physicians. *Compare Old Ben Coal Co. v. Luker,* 826 F.2d 688, 692 (7th Cir.1987) (finding ALJ did not substitute his expertise for the physician's) *with Wetherill,* 812 F.2d at 382 (finding that ALJ did substitute his expertise for the physician's). He also rejected the positive x-ray reading simply by recognizing more negative readings,[13] and he failed to consider the fact that Old Ben had accepted the NIOSH positive reading and had moved Mr. Mitchell to a less dusty job as a result. There was substantial evidence before the ALJ, had he considered all the relevant medical evidence, that Mr. Mitchell was totally disabled due to chronic obstructive pulmonary impairment

and simple pneumoconiosis. There was no medical evidence to the contrary. This evidence of total disability, when considered in the case of a miner with fifteen years of coal mine employment, establishes that Mr. Mitchell was totally disabled due to pneumoconiosis pursuant to 30 U.S.C. § 921(c)(4).[14] *See Bosco v. Twin Pines Coal Co.,* 892 F.2d 1473, 1480–81 (10th Cir.1989) (concluding that ALJ's denial of presumption for failure to establish pneumoconiosis or total respiratory or pulmonary disability arising out of coal mine employment denied the claimant the benefit of the presumption).

3.

■ The presumption established by a claimant can be rebutted by the employer's proof that the miner did not have pneumoconiosis or that his respiratory or pulmonary impairment did not arise out of his employment in a coal mine. 20 C.F.R. § 718.305(a). In this case the ALJ concluded that the presumption was not invoked, and that, even if Mrs. Mitchell had proven her claim, the presumption "would be rebutted on the failure of this record to show the existence of pneumoconiosis." ALJ Order at 5. By failing to acknowledge that Old Ben had the burden of proof on the matter of rebuttal, as the Act requires, the ALJ again erred.[15] The rebuttal requirement under § 921(c)(4) is not that the *record fail to show* the existence of pneumoconiosis, but rather that the *respondent establish* that the miner did not have pneumoconiosis or that his pulmonary

13. Our cases have not approved of pneumoconiosis determinations simply based upon the numerical count of positive or negative readings. *See Old Ben Coal Co. v. Battram,* 7 F.3d at 1277 ("While our cases recognize numerical disparities as a relevant factor in the ALJ's analysis, they are also critical of decisions based entirely upon 'head counts' of experts.") (citations omitted). Certainly, it is acceptable to use x-ray evidence in combination with other factors to demonstrate the absence or presence of pneumoconiosis. *Chastain v. Freeman United Coal Mining Co.,* 927 F.2d 969, 970 (7th Cir.1991). However, "while X-rays *demonstrating* pneumoconiosis are reliable to prove the existence of the disease, the absence of such evidence in X-rays does not reliably indicate that the miner does not suffer from pneumoconiosis." *Id.* (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 31–34, 96 S.Ct. 2882, 2899–2901, 49 L.Ed.2d 752 (1976));

*see also Amax Coal Co. v. Director, O.W.C.P.,* 801 F.2d 958, 962 (7th Cir.1986) (citing cases stating that single positive x-ray may create the presumption of disability, even though other films do not show pneumoconiosis). The ALJ's rejection of the positive x-ray reading without explanation, by sheer tallying of the x-ray results, was error.

14. *See supra* note 6.

15. *See Bosco,* 892 F.2d at 1481 (stating that the Act shifts the burden to employer to establish the lack of pneumoconiosis and/or a connection with mine work, a shift the ALJ did not recognize); *Rose,* 614 F.2d at 939 (concluding that the Board erred in failing to impose on respondents the burden of rebutting the presumption).

impairment did not arise out of his coal mine employment. The record does not reflect that a positive showing of either factor was made by Old Ben. The ALJ's strained interpretations of other evidence of record in order to conclude that there was no total impairment prior to Mr. Mitchell's death reflects graphically his failure to allocate properly the burden of proof in his assessment of the evidence. For example, the ALJ found that, because the death certificate did not list the impairment, "there was no respiratory or pulmonary disability." This reliance on the death certificate's recital of the cause of death denied Mrs. Mitchell the full benefit of the presumption as it exists for survivor's claims filed before January 1, 1982.[16] It simply was not necessary for Mrs. Mitchell to establish that her husband died due to pneumoconiosis. A misallocation of the burden of proof is also obvious in the ALJ's mention that he found "nothing to indicate that the disability [Mrs. Mitchell] described was not directly related to the husband's serious cancer illness which eventually led to his death." The presumption has not been rebutted.

### Conclusion

The decision of the ALJ denying the claim for black lung benefits on behalf of the miner Mr. Mitchell and his widow was not supported by substantial evidence. The ALJ committed legal error when he denied the rebuttable presumption and failed to hold the Secretary to his statutory burden of rebutting that presumption. The Board committed legal error, as well, by excusing the legal error of the ALJ on the ground that he had excluded from all consideration the opinions of the two physicians that had attended Mr. Mitchell. In light of the ALJ's discounting of such evidence as the NIOSH x-ray reading of simple pneumoconiosis, Old Ben's transfer of Mr. Mitchell to a less dusty assignment (evidence of changed circumstances of employment under § 718.204(e)(3)(iii)), Dr. Fox's diagnosis of chronic obstructive pulmonary disease, x-ray evidence of past inflammatory disease and granulomata, and Dr. Barkdull's explicitly stated medical opinion

that Mr. Mitchell was totally disabled due to pneumoconiosis, we conclude that the petitioner met the prerequisites of the rebuttable presumption of 30 U.S.C. § 921(c)(4). The record contains no evidence that is relevant to rebut, as the Secretary or the employer must, that presumption. Consequently, we reverse the decision of the Board and direct that Mrs. Mitchell be awarded the benefits to which she is entitled under the statute. *See Chastain v. Freeman United Coal Mining Co.,* 919 F.2d 485, 491 (7th Cir.1990); *Campbell v. Director, O.W.C.P.,* 846 F.2d 502, 509 (8th Cir.1988).

So Ordered.