87 F.3d 1316
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
FREEMAN UNITED COAL MINING COMPANY, Employer-Petitioner,
v.
Charles CONOVER; Benefits Review Board, United States
Department of Labor; and Director, Office of
Worker's Compensation Programs, United
States Department of Labor, Respondents.
 No. 95-3238.
 United States Court of Appeals, Seventh Circuit.
 Argued April 24, 1996.
Decided May 28, 1996.
 
 Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Charles Conover sought and received an award of benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901, et seq. His employer, Freeman United Coal Mining Company, appeals the award. We affirm.
 
 FACTS
 
 2
 Conover worked for the Freeman United Coal Mining Company ("Freeman") for thirty-four years. He spent the years 1945-71 at Freeman's Cuba Mine, working as a relief driver and a mechanic. From 1972-74, Conover worked as a truck driver at the Banner Mine. From 1974-80, he worked maintenance in the railroad yard and the tipple, and served as an oiler on the 1650 shovel at the Buckhart Mine. Conover retired on January 23, 1980.
 
 
 3
 In 1980, Conover had part of his left lung surgically removed as a consequence of lung cancer. Conover had also been a heavy smoker for decades, and only quit after surgery. Conover filed an application for black lung benefits on April 21, 1980. On June 25, 1984, the deputy commissioner determined that Conover was eligible for benefits. Freeman appealed, and the case was referred to an Administrative Law Judge ("ALJ") for a formal hearing.
 
 
 4
 The original ALJ on the case was Edward Murty, who issued his decision on March 17, 1987 ("Order I"). ALJ Murty concluded that Conover had shown that he had pneumoconiosis[1], and was entitled to the presumption that it was related to his work as a coal miner, pursuant to 20 CFR § 718.203(b)[2]. The ALJ denied benefits, however, concluding that Conover did not show that he was totally disabled, pursuant to 20 CFR § 718.204(c)[3], because his pulmonary function tests were inadequate, his blood gas tests were inadequate, there was no evidence of congestive heart failure, and the physicians' opinions were inadequate. The ALJ also concluded that Conover was not entitled to the presumption in 20 CFR § 718.305, as he had not shown the coal dust conditions at the surface mines where he worked were equivalent to underground mine conditions.
 
 
 5
 The Benefits Review Board ("BRB") entered an order remanding the case on March 18, 1993 ("Order II"). The BRB first affirmed the unchallenged findings of the ALJ: (1) that Conover had pneumoconiosis arising out of his coal mine employment; (2) that the evidence was insufficient to establish total disability under §§ 718.204(c)(1)-(3); and (3) that Conover had thirty-four years of coal miner service. The BRB reversed the ALJ regarding his analysis of total disability under § 718.204(c)(4), noting that the ALJ seemed to have misconstrued Dr. Lenyo's analysis. The BRB also reversed the ALJ's conclusion regarding surface versus subsurface mining conditions, in light of this court's decision in Director, O.W.C.P. v. Midland Coal Company, 855 F.2d 509 (7th Cir.1988).
 
 
 6
 On remand, the case was presented to ALJ Richard Mills, who issued an opinion granting benefits on August 22, 1994 ("Order III"). ALJ Mills concluded that Conover had established he was totally disabled, relying largely on the opinion of Dr. Lenyo, but specifically noting that most of the other medical evidence, to a greater or lesser degree, buttressed Lenyo's conclusions. ALJ Mills also concluded that Conover was entitled to the presumption in § 718.305[4], as he had shown his surface mining employment exposed him to a sufficient amount of coal dust. As to this issue, ALJ Mills considered Conover's testimony about his working conditions, Mr. Hall's testimony (a foreman for Freeman), and Mr. Hilton's testimony (a fellow miner). ALJ Mills also considered the three notices of compliance[5] submitted by Freeman, but concluded they were of little weight.
 
 
 7
 The BRB affirmed the ALJ's decision on July 28, 1995 ("Order IV"). The BRB concluded that the ALJ's reliance on Dr. Lenyo's report was appropriate, and noted that the other medical evidence buttressed Lenyo's opinion. The BRB also concluded that the ALJ properly held Conover was entitled to the § 718.305 presumption, as the testimony established sufficient coal dust exposure.
 
 On appeal, Freeman raises two issues:
 
 8
 1. Whether the ALJ's finding that Conover was totally disabled was rational and supported by substantial evidence;
 
 
 9
 2. Whether the ALJ's determination that the conditions of Conover's employment at surface mines were substantially similar to conditions in an underground mine was supported by substantial evidence.
 
 ANALYSIS
 A. Standard of Review
 
 10
 Although the case is a final decision of the BRB, this court reviews the ALJ's decision to ascertain whether it is rational, supported by substantial evidence, and consistent with governing law. Old Ben Coal Company v. Director, O.W.C.P., 62 F.3d 1003, 1006 (7th Cir.1995). Substantial evidence is defined as " 'such relevant evidence as a rational mind might accept as adequate to support a conclusion.' " Id. (citation omitted). This court will not reweigh the evidence or substitute its judgment for that of the ALJ. Id. This court will, however, carefully review the record to ascertain that the ALJ considered all the relevant evidence. Id. After this examination, this court then reviews the BRB decision to ascertain whether the BRB used the proper scope of review and whether it committed any legal error. Blakley v. Amax Coal Co., 54 F.3d 1313, 1318 (7th Cir.1995).
 
 B. Merits
 
 11
 As Conover's claim was filed after March 31, 1980, it is administered by the Department of Labor and governed by the Part C regulations at 20 CFR § 718.201, et seq. Mitchell v. O.W.C.P., 25 F.3d 500, 504 (7th Cir.1994). In order to qualify for black lung benefits, a miner must show that he is totally disabled due to pneumoconiosis. Consolidation Coal Company v. O.W.C.P., 54 F.3d 434, 436 (7th Cir.1995). To prove this, the miner must show: (1) that he suffers from pneumoconiosis; (2) that the pneumoconiosis arose out of his coal mine employment; (3) that he is totally disabled; and (4) that the miner's total disability is due to pneumoconiosis. Id. at 436-37. Freeman only challenges factors (3) and (4). Freeman maintains Conover has not shown he is totally disabled and does not qualify for the § 718.305 presumption that his disability is due to pneumoconiosis.
 
 1. Total Disability
 
 12
 The issue is whether Conover established total disability via the physicians' reports, pursuant to § 718.204(c)(4). The X-ray and blood gas test results varied, and were not sufficiently poor to entitle Conover to a presumption of disability by themselves.
 
 
 13
 The key medical evidence consists of seven physicians' reports.
 
 
 14
 1. The first report was from Dr. Bugaieski, dated June 12, 1980, which diagnosed simple coal worker's pneumoconiosis. (Director's Exhibit # 22). The report was based on both test results and an examination.
 
 
 15
 2. Dr. Bugaieski's second report, dated July 28, 1983, indicated test results not inconsistent with pneumoconiosis, but did not rule out other conditions. (Director's Exhibit # 21). Dr. Bugaieski noted Conover was suffering from a chronic obstructive pulmonary disease and had severe limitations on his activity.
 
 
 16
 3. Dr. Mathews, one of Conover's treating physician's, issued a report on August 25, 1980, indicating Conover was totally disabled, possibly with pneumoconiosis. (Director's Exhibit # 20).
 
 
 17
 4. Dr. Gouda, another of Conover's treating physicians, issued a report on January 2, 1981, opining that Conover would not be able to return to work because of his health problems. (Director's Exhibit # 18).
 
 
 18
 5. Dr. Long, medical consultant for the Department of Labor, issued a report on September 4, 1980, indicating Conover was disabled and had pneumoconiosis. (Director's Exhibit # 13).
 
 
 19
 6. Dr. Pearson, the physician for the employer, issued a report on April 19, 1984, which opined that Conover did not have pneumoconiosis, but did not explicitly comment on disability. (Director's Exhibit # 44).
 
 
 20
 7. Dr. Lenyo issued a report on September 18, 1986, which concluded Conover was totally disabled due to pneumoconiosis acquired during the course of his employment. (Claimant's Exhibit # 1). Dr. Lenyo's conclusion was based on a medical history, a physical, an electrocardiogram, pulmonary function tests, blood-gas tests, and chest x-rays.
 
 
 21
 The ALJ's conclusion is rational and based on substantial evidence. Primary reliance on Dr. Lenyo's report is appropriate, given its extensiveness and its corroboration by most of the other reports. Only Dr. Pearson's report is significantly inapposite, and it is the ALJ's role to resolve such conflicts in the medical evidence. See Blakley, 54 F.3d at 1321-22; Summers v. Freeman United Coal Mining Co., 14 F.3d 1220, 1223 (7th Cir.1994).
 
 
 22
 Freeman's arguments to the contrary are unpersuasive. Freeman first argues that most of the opinions indicating total disability are cursory and poorly supported. A physician's report is not rendered inadequate simply because the physician does not elaborate upon his diagnoses. See Poole v. Freeman United Coal Mining Company, 897 F.2d 888, 893-94 (7th Cir.1990); Mitchell, 25 F.3d at 507. Further, the ALJ used the shorter reports primarily as corroboration for Dr. Lenyo's detailed report. Freeman also argues that Dr. Lenyo disregarded the test results and ignored Conover's smoking and lung cancer. However, Lenyo's report specifically noted Conover's smoking and cancer. (See Claimant's Exhibit # 1). In addition, Lenyo discussed the test results and found support for his diagnosis, as they indicated subnormal results. That the test results were not sufficiently poor to entitle Conover to a presumption under §§ 718.204(c)(1)-(3) does not end the ALJ's inquiry, otherwise § 718.204(c)(4) would be written out of the code. See Poole, 897 F.2d at 893. See also Summers, 14 F.3d at 1223 (benefits may not be denied solely on the basis of a negative x-ray).
 
 2. Section 718.305 Presumption
 
 23
 The ALJ concluded that Conover was entitled to the § 718.305 presumption that he is totally disabled due to pneumoconiosis. To qualify for the § 718.305 presumption, a claimant must show that he was employed for fifteen years or more in underground coal mines, unless the conditions of his employment in a surface mine "were substantially similar to conditions in an underground mine." 20 CFR § 718.305. Once the claimant qualifies for the presumption, the burden of rebutting the presumption shifts to the employer, who must show a lack of pneumoconiosis or a lack of relationship between the disability and the coal mining employment. Mitchell, 25 F.3d at 505-506. Freeman maintains Conover does not qualify for the presumption, because he failed to show his working conditions in the three surface mines were substantially similar to the working conditions in an underground mine. We conclude the § 718.305 presumption was properly invoked.
 
 
 24
 A claimant need not produce evidence showing the prevailing conditions in an underground mine; the claimant need only establish that he was exposed to sufficient coal dust in his surface mine employment. Director, O.W.C.P. v. Midland Coal Company, 855 F.3d 509, 512 (7th Cir.1988). See also Blakley, 54 F.3d at 1319. The ALJ, based on his expertise and appropriate objective factors, should compare the conditions experienced by the claimant with the working conditions known to prevail in underground mines. Midland Coal, 855 F.2d at 512. The ALJ must weigh the evidence and make a factual finding regarding the substantial similarity of the conditions. Id. at 513.
 
 
 25
 The ALJ's decision was based upon the testimony of Conover, Hall, and Hilton. Conover testified to the very dusty conditions at his respective assignments.[6] (See 1987 Hearing Transcript). Conover's testimony was completely corroborated by Hilton's deposition testimony. Hilton testified in great detail about the heavy coal dust exposure of truck drivers, oilers on the 1650 shovel, and mechanics in the shed. (Claimant's Exhibit # 3, Hilton dep. at 7-33). Further, Hilton had considerable experience in both surface and underground mines, and testified that surface mines were dustier than underground mines, as underground mines had the advantage of sprinkler systems and air circulators. (Id. at 21-23). This testimony is sufficient to support the ALJ's finding. See generally Blakley, 54 F.3d at 1319 (witness testimony regarding exposure to coal dust). Freeman's witness, Hall, testified that the dust at Conover's duty stations was limited, for example, that half the dust unearthed by the 1650 shovel would be normal dirt and that water trucks kept the dust levels down on the roads. (1994 Hearing Transcript at 25, 30-31, 33-35). However, Hall conceded that there was considerable dust variation at a mine, that dust was present on the roads despite the water trucks, that the 1650 shovel kicked up considerable coal dust in the pit, and that conditions were dustier on the day shift (when Conover worked). (Id. at 36-45). Hall testified that underground conditions were worse, but conceded that he had only spent a few hours underground. (Id. at 29, 30, 39). The ALJ's function was to weigh this testimony, and it is not this court's function to reweigh it.
 
 
 26
 Freeman also argues that the ALJ erred in considering the pathology report from Dr. Bugaieski and in not considering the notices of compliance, which Foreman maintains refute Conover's claims of exposure to considerable coal dust. There is nothing irrational in the ALJ considering the medical evidence. However the short shift the ALJ gave the dust samples gives us some pause. The samples were the only objective evidence of the coal dust conditions in the record. As the rest of the evidence consisted of witnesses' subjective assessments of "dustiness", the samples warranted meaningful consideration by the ALJ, and an adequate explanation for why they were discounted. Yet the ALJ curtly concluded "... no conclusion can drawn from these documents other than that the U.S. Department of Interior ordered annual sampling of claimant's work environment for three different periods, and that because employer submitted samples, it was in compliance." (Order III at 9). Worse, this curt assessment raises the question of whether the ALJ properly understood the dust sample evidence. The samples were not just required filings, but measures of the actual coal dust levels at Conover's work sites. If an ALJ misinterprets evidence that could influence his conclusion, a remand is appropriate. See Poole, 897 F.2d at 895.
 
 
 27
 We conclude, however, that a remand is unnecessary. First, Freeman had the opportunity to explain the significance of the samples to the ALJ. (See 1994 Hearing Transcript at 15-16). Second, the samples, as presented, are entitled to no weight. The record indicates, and Freeman's counsel at oral argument conceded, that no attempt was made to show that the samples were in any way representative of the conditions Conover experienced during his thirty-four year career. Freeman did not show Conover was performing his usual duties when tested; the results would be obviously misleading if they were taken while he was visiting the administrative offices to take an annual physical. Further, Freeman put on no evidence indicating why those three days were selected. More significantly, there was no evidence put on indicating how these samples compared with contemporaneous underground samples. This last factor seemed the most important to the ALJ.[7]
 
 
 28
 Lastly, Freeman argues that a finding in Conover's favor would, as a policy matter, effectively equate surface and underground mines in all circumstances unless the surface conditions were "pristine." As the testimony did not indicate the conditions were pristine, and given Hilton's testimony that the surface conditions were worse than an underground mine, this argument is unpersuasive.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 "For the purpose of the Act, 'pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment...." 20 CFR § 718.201
 
 
 [2]
 "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." 20 CFR § 718.203(b)
 
 
 [3]
 20 CFR § 718.204(c) provides, in relevant portion:
 (c) Criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability;
 (1) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males); ...
 (2) Arterial blood-gas tests showing the values listed in Appendix C to this part, or
 (3) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from corpulmonale with right sided congestive heart failure, or
 (4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment....
 
 
 [4]
 20 CFR § 718.305 provides, in relevant portion:
 (a) If a miner was employed for fifteen years or more in one or more underground coal mines, ... and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis,.... The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where it is determined that conditions of the miner's employment in a coal mine were substantially similar to conditions in an underground mine....
 
 
 [5]
 The notices of compliance were coal dust samples taken from Conover's respirator by Freeman to show Freeman's coal dust levels were within acceptable limits. The samples were submitted to the Mining Enforcement and Safety Division. The first sample was taken on April 9, 1974, the second on February 13, 1975, and the third on October 27, 1977. All three samples indicated coal dust levels far below recommended safe levels
 
 
 [6]
 Freeman also argues the ALJ erred in concluding Conover's testimony regarding "dust" meant "coal dust." This fact-finding is entitled to deference. A reading of the transcript indicates any other interpretation is nonsensical
 
 
 [7]
 At the hearing, the ALJ stated that he did "not see the relationship between [the samples] and exposure to underground mining and surface mining." (1994 Hearing Transcript at 16). The focus of the hearing was upon whether the conditions Conover experienced at surface mines were comparable to underground conditions