Lois BLAKLEY, Widow of Morris Blakley, Petitioner,

v.

AMAX COAL COMPANY, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 94–2169.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1995.

Decided May 25, 1995.

Thomas E. Johnson (argued), Leslie A. Jones, Johnson, Jones, Snelling & Gilbert, Chicago, IL, for petitioner.

Patricia M. Nece, Lawrence W. Rogers, Barry H. Joyner (argued), Barry H. Joyner, Dept. of Labor, Office of the Sol., Washington, DC, for Director, Office of Workers Compensation Programs.

W.C. Blanton, Terri A. Czajka (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, for Amax Coal Co.

Paul E. Travers, Benefits Review Bd., Donald S. Shire, Sol. Gen., Dept. of Labor, Office of the Sol., Washington, DC, for Benefits Review Bd.

Before FLAUM and EASTERBROOK, Circuit Judges, and CRABB, District Judge.*

FLAUM, Circuit Judge.

In this appeal, we consider a petition for review of an order of the Benefits Review Board of the United States Department of Labor denying Lois Blakley benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. Coal miner Morris Blakley applied for black lung benefits on January 5, 1981, prior to his death in 1985. Petitioner Lois Blakley, his widow, timely filed a claim for survivor benefits. Mrs. Blakley now appeals the ruling of the Benefits Review Board ("the Board") affirming the decision of the Administrative Law Judge ("ALJ") denying benefits. For the reasons that follow, we enforce the decision of the Board.

## I.

Morris Blakley was a coal miner for twenty-one years. His social security records, which cover 1940–1952 and 1954–1979, established at least twenty one years of coal mine employment with a number of coal companies. Specifically, and what is important for this appeal, Mr. Blakley worked at the Amax Coal Company's ("Amax") Thunderbird Mine, an underground coal mine, between August, 1969 and January, 1972, and then at Amax's Aycoe Mine, a surface mine, until May, 1978. He then worked at Amax's Ayrshire surface mine, until he retired on January 5, 1982. In addition to his exposure to coal dust, Blakley smoked approximately two packs of cigarettes per day for close to forty-five years, resulting in a smoking history of between 80 and 120–pack years. Mr. Blak-

ley suffered from atherosclerosis, hypertension, and amyotrophic lateral sclerosis, a disease affecting his respiratory muscles, and had a heart attack in 1983. On May 19, 1985, at age sixty-five, he died as a result of respiratory arrest and amyotrophic lateral sclerosis.

In 1981, Morris Blakley filed an application for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (the "Act"). The Deputy Commissioner of the Office of Workers' Compensation Programs ("OWCP") of the United States Department of Labor rejected this application on June 9, 1981, concluding that the evidence did not establish that Blakley was totally disabled due to pneumoconiosis. Blakley did not contest this decision or file for reconsideration within sixty days, thus abandoning the claim as a matter of law. *See* 20 C.F.R. § 725.410(c).

On May 6, 1982, within one year of the denial of benefits, Gene Bradley, a lay representative of the United Mine Workers, sought modification of the OWCP's decision pursuant to 20 C.F.R. § 725.310 on the basis of evidence submitted by Blakley in the form of a certificate of retirement and the evidence developed by the OWCP in connection with Blakley's original claim for benefits. On May 13, 1982, the Deputy Commissioner awarded benefits to Blakley based on this information. Amax contested this decision, which the OWCP affirmed on February 18, 1983. Amax again contested the determination and sought a formal hearing before an ALJ.

At the April, 1985 ALJ hearing, Amax requested that the ALJ only consider: (1) the scope of the OWCP's and ALJ's roles when modification is requested and (2) what evidence should be considered in determining whether a claimant has satisfied his burdens of proof under § 725.310. The ALJ concluded that Blakley had not provided evidence of a change in condition or demonstrated a mistake of fact in the original decision, as required by the Act's modification provision.

---

* The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western

30 U.S.C. § 932(a).[1] The Director appealed this decision, arguing that the ALJ erred in confining his modification inquiry to the evidence submitted by Bradley, and that the ALJ instead should have conducted a *de novo* review of the record as a whole. Consistent with *Amax Coal Co. v. Franklin*, 957 F.2d 355 (7th Cir.1992), the Board agreed with the Director's argument and on June 30, 1989, vacated the ALJ's denial of benefits and remanded for further proceedings.

On remand, the ALJ held a hearing on May 2, 1991, at which he considered all evidence of record under § 725.310. The ALJ admitted into evidence the Director's thirty exhibits from Mr. Blakley's original claim, the Director's eleven exhibits from Mrs. Blakley's claim, twenty exhibits from Amax, and twelve new exhibits from Mrs. Blakley. The parties also entered into a joint stipulation of medical evidence summarizing the x-ray evidence, pulmonary function and arterial blood studies, physicians' reports, hospital records, and death certificate. The record contains medical opinions from six physicians, as well as hospital and nursing home records. We briefly summarize the relevant testimony of each physician.

Dr. Peter G. Tuteur is board-certified in internal and pulmonary medicine. He reviewed Mr. Blakley's records and in a March 11, 1991 report diagnosed advanced chronic obstructive pulmonary disease caused by smoking. Dr. Tuteur concluded that Blakley did not have coal miner's pneumoconiosis or any other condition arising out of coal mine employment. He found that Blakley had neither a restrictive ventilatory defect nor an impairment of gas exchange, two symptoms associated with "disabling pneumoconiosis." At his July 31, 1991 and August 28, 1991 depositions, Dr. Tuteur again stated that there was no evidence of restrictive impairment which would have been caused by coal dust exposure. He testified that, contrary to the opinions of two other physicians, coal

dust exposure could not cause an obstructive impairment, although he noted that in some rare cases, a non-smoking miner could develop a "trivial" obstruction. He further testified that where a miner developed obstructive disease, if the miner was also a heavy smoker, then the miner's condition should be attributed, with a reasonable degree of medical certainty, to the smoking and not the coal dust.

Dr. Lloyd Craig Miller is board-certified in both internal and pulmonary medicine. In his April 19, 1985 deposition, he concluded, based on his review of various medical records, that Blakley did not have coal worker's pneumoconiosis but did suffer from respiratory dysfunction, arising out of chronic obstructive lung disease of an emphysematous type caused by smoking. Dr. Miller also testified, however, that he could not "state to a reasonable medical certainty that Mr. Blakley's coal mine employment was not at least a contributing factor to his significant lung disease."

Dr. Kenneth Wilhelmus examined Blakley on behalf of the Department of Labor, taking a chest x-ray, conducting pulmonary function and arterial blood gas studies, and performing a physical examination. He diagnosed Blakley as having a moderate chronic pulmonary impairment which was both obstructive (due to smoking) and restrictive (due to "mucus plugging"), as well as arteriosclerotic heart disease and hypertension.

Dr. Donald L. Rasmussen, board certified in internal medicine, concluded in his May 31, 1991 report that Blakley was totally disabled by a respiratory impairment whose etiologic factors were smoking and coal mine employment. At his June 26, 1991 and September 5, 1991 depositions, Dr. Rasmussen again stated that Blakley's obstructive impairment was consistent with both smoking and coal dust exposure. Dr. Peter Orris, who is board certified in preventive and occupation-

District of Wisconsin, sitting by designation.

1. After the hearing but prior to the ALJ's decision, Blakley died. His widow, Lois Blakley, filed a survivor's notification of beneficiary's death, which was consolidated with Mr. Blakley's claim. Although Mrs. Blakley cannot independently qualify for benefits under 30 U.S.C.

§ 921(a) and 20 C.F.R. § 718.205, she would be eligible for continuing benefits if her deceased husband's claim is approved. 20 C.F.R. § 725.201(a). Although this case comes before us as Mrs. Blakley's claim, we will refer to the claims as they were originally brought by Mr. Blakley.

al medicine, reached substantially similar conclusions in a June, 1990 report and so testified at a May 24, 1991 deposition.

On January 27, 1992, the ALJ denied benefits. The ALJ found that Blakley failed to satisfy his burden of proving that he had pneumoconiosis under § 718.202(a)(1) and that he failed to demonstrate the existence of pneumoconiosis by reasoned medical opinion evidence under § 718.202(a)(4). The ALJ then considered whether Blakley had established the existence of pneumoconiosis on the basis of the presumptions contained in § 718.305. The ALJ determined that Blakley established that he had worked for fifteen or more years in underground or substantially similar coal mining conditions and that he was entitled to the rebuttable presumption that he was totally disabled due to pneumoconiosis. 20 C.F.R. §§ 718.305(c), 718.204(c)(4). The ALJ then held that Amax rebutted this presumption by showing that: (1) Blakley did not have pneumoconiosis; and (2) even if he did have the disease, it did not arise in whole or in part from dust exposure during his coal mine employment. 20 C.F.R. § 718.305(d). The ALJ concluded that Blakley neither met his burdens under § 718 nor established a change in condition or mistake in fact that might entitle him to modification under § 725.310. Consequently, Mrs. Blakley could not recover benefits on her survivor's claim. After a denial of her motion for reconsideration, Mrs. Blakley sought review by the Board. The Board affirmed the ALJ's decision on March 30, 1994. Mrs. Blakley then petitioned us for review.

## II.

■ The fundamental issue on appeal is whether the ALJ erred in denying benefits.[2]

Specifically, Blakley contends that he was eligible for benefits under the fifteen year presumption found in the Act. 30 U.S.C. § 921(c)(4), and 20 C.F.R. § 718.305. Although the case on appeal is a final decision of the Board, "we review the benefits determination of the ALJ, rather than the Board, to determine whether it is rational, supported by substantial evidence, and is consistent with the governing law." *Mitchell v. OWCP*, 25 F.3d 500, 504 (7th Cir.1994); *see also Benedict v. Director, OWCP*, 29 F.3d 1140, 1142 (7th Cir.1994); *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1275 (7th Cir.1993). We do not reweigh the evidence nor substitute our judgment for that of the ALJ. We do, however, carefully review the record to insure that the ALJ considered all of the relevant medical evidence. *Mitchell*, 25 F.3d at 504–05; *Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1394 (7th Cir.1994). After this examination, we then review the Board's decision to determine whether the Board adhered to its scope of review and whether it committed any legal error. *Shelton v. Old Ben Coal Co.*, 933 F.2d 504, 506 (7th Cir. 1991).

■ In order to establish entitlement to benefits under the Act, the claimant initially must prove the existence of pneumoconiosis by one of four methods under 20 C.F.R. § 718.202.[3] Blakley maintains that the ALJ erred in its determination under § 924(c)(4) and 20 C.F.R. § 718.305(a), which establish a framework of shifting presumptions that governs decisions to award benefits. He does not contend that the ALJ erred in finding the absence of pneumoconiosis under any of the first three. 20 C.F.R. §§ 718.202(a)(1) (positive chest x-ray); 718.202(a)(2) (biopsy or

**2.** On appeal, Blakley first argues that the ALJ erred in concluding that reopening the claim was improper because there was no basis for modification under any theory. A denial of benefits can be reopened within one year upon a showing of a change in the miner's condition or a mistake in the determination of fact. 33 U.S.C. § 922, incorporated by reference in 30 U.S.C. § 932(a); 20 C.F.R. § 725.310; *Franklin*, 957 F.2d at 356. We need not decide this issue. The ALJ reached the merits of the claim thereby rendering harmless any error the ALJ might have made in declining to reopen the case. *See Sahara Coal Co.*

*v. Director, OWCP*, 946 F.2d 554, 558 (7th Cir. 1991).

**3.** Blakley initially filed his disability benefits application on January 5, 1981. Any claim filed after March 30, 1980 is administered by the Department of Labor and is governed by the permanent part C regulations found at 20 C.F.R. § 718.201 *et seq. Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 139, 108 S.Ct. 427, 430, 98 L.Ed.2d 450 (1987); *Mitchell*, 25 F.3d at 504; *Bracher v. Director, OWCP*, 14 F.3d 1157, 1158 (7th Cir.1994).

autopsy); 718.202(a)(4) (other objective medical evidence).

Section 924(c)(4)[4] and its accompanying regulations, 20 C.F.R. § 718.305(a), create a presumption of pneumoconiosis if the claimant demonstrates: (1) that he has worked in underground or comparable surface mines for fifteen years; (2) that his x-ray evidence does not show complicated pneumoconiosis; and (3) that he had a totally disabling respiratory or pulmonary impairment. If the claimant establishes this presumption, the employer can rebut it by proof that the coal miner did not have pneumoconiosis or that his impairment did not arise out of his coal mining employment. 30 U.S.C. § 921(c)(4).

 To invoke the presumption of pneumoconiosis, Blakley must first establish that he worked for fifteen years in an underground mine or in a surface mine with dust conditions substantially similar to those found in underground mines. 20 C.F.R. § 718.305(a); *Director, OWCP v. Midland Coal Co.*, 855 F.2d 509, 511 (7th Cir.1988). Blakley "bears the burden of establishing comparability" but "must only establish that he was exposed to sufficient coal dust in his surface mine employment." *Midland Coal*, 855 F.2d at 512–13.

The ALJ explicitly applied *Midland Coal* in deciding whether the conditions existing at the surface mine where Blakley worked were substantially similar to conditions found in underground coal mines. Blakley worked as an underground coal miner for twelve years and as a surface coal miner for nine years. The ALJ found that Blakley sufficiently proved that during at least three of the nine years he was a surface miner, Blakley was exposed to dust conditions substantially similar to those underground. The ALJ, relying on the testimony of two witnesses, who both testified that Blakley was exposed to coal dust while a surface miner, specifically concluded that Blakley "has established that he was exposed to sufficient coal dust in his surface mine employment ... [and] that he has also established that his coal mine employment took place in conditions substantially similar to underground coal mine employment." We will not overturn these findings.

 Because his x-ray evidence did not show complicated pneumoconiosis that would make him eligible for the § 718.304 presumption, Blakley had to introduce other evidence demonstrating a "totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 924(c)(4); 20 C.F.R. § 718.305(a); *see Mitchell*, 25 F.3d at 505. Section 718.204 sets out five criteria to be applied in evaluating the existence of a totally disabling impairment. In the instant case, only § 718.204(c)(4) applies.[5] That section states:

(4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, ... total disability may nevertheless be found if a physician exercising reasoned medical judgment,

---

**4.** 30 U.S.C. § 924(c)(4), in pertinent part, states:

(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's ... claim under this subchapter, and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.... The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The Subpart C regulations of 20 C.F.R. § 718.305(a) repeat this provision.

**5.** Under 20 C.F.R. § 718.204(c), a miner establishes total disability if the evidence meets the standards of *any* of the five criteria presented. In the instant case the ALJ concluded that Blakley did not establish disability through pulmonary function tests, § 718.204(c)(1); through arterial blood-gas tests, § 718.204(c)(2); or through proof that he suffered from cor pulmonale with right sided congestive heart failure, § 718.204(c)(3). Section 718.204(c)(5), which allows lay testimony when the miner is deceased and there is no medical or other relevant evidence, is not pertinent in this case.

based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section.

The ALJ concluded, and neither party disputes, that Blakley proved the fourth element.

■■■■ Because Blakley established total disability presumptively caused by black lung disease, we turn to whether Amax rebutted the presumption. To do so, Amax must establish that, "(A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305. The burden of proof lies on the employer to rebut the presumption. *Mitchell,* 25 F.3d at 509. Even though Amax only had to establish one of the two prongs, the ALJ found that Amax proved both.

With regard to the first prong, Amax had the burden of establishing that Blakley did not have pneumoconiosis. The statutory regulations define pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment ... [and] includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201. The ALJ concluded, the Board affirmed, and Blakley does not challenge [6] that the preponderance of chest x-ray evidence was negative and the majority of reasoned medical opinion indicated that Blakley did not suffer from pneumoconiosis. *See* 20 C.F.R. §§ 718.202(a)(1) (x-ray evidence), 718.202(a)(2) (biopsy or autopsy evidence), or 718.202(a)(4) (other objective medical tests and evidence). Instead, Blakley's own primary medical witnesses, Drs. Orris and Rasmussen, testified that in the absence

of a finding of medical pneumoconiosis, they could not conclude that the coal dust caused Blakley's impairment. The ALJ properly weighed the conflicting testimony and ultimately determined that the medical evidence did not establish the existence of pneumoconiosis. *Cf. Mitchell,* 25 F.3d at 508.

■■■■ The ALJ also found that Amax successfully rebutted the presumption by establishing that the pneumoconiosis "did not arise in whole or in part" out of exposure to coal dust. 20 C.F.R. § 718.305. In order to satisfy its burden, Amax must prove by a preponderance of the evidence that coal dust exposure was not a contributing cause of Blakley's disabling pulmonary impairment. *Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir.1992); *Pancake v. AMAX Coal Co.,* 858 F.2d 1250, 1257 (7th Cir.1988) (interpreting same language in 20 C.F.R. § 727.203(b)(3)); *Wetherill v. Director, OWCP,* 812 F.2d 376, 380 (7th Cir.1987). We have read the "contributing cause" language to mean that mining must be a necessary, but need not be a sufficient, condition of the miner's disability. *Beasley,* 957 F.2d at 327; *Compton v. Inland Steel Coal Co.,* 933 F.2d 477, 480–81 (7th Cir.1991); *Shelton v. Director, OWCP,* 899 F.2d 690, 693 (7th Cir. 1990). If Amax establishes that a miner would have been disabled regardless of the exposure to coal dust, then the coal dust has not contributed to the disability. *Shelton,* 899 F.2d at 693 ("A miner is not entitled to benefits if by reason of his heavy smoking ... he would have become totally disabled (and no later than he did) even if he had never gone near a coal mine.... The Black Lung Act is generous, but not that generous. It is not a welfare program for cigarette smokers."). "Thus, an employer can rebut the presumption of disability due to [Coal Worker's Pneumoconiosis] by showing, for example, that a claimant's smoking would have disabled him, by itself, even if he had spent his life as an accountant, rather than a miner." *Beasley,* 957 F.2d at 327. We must now decide whether substantial evidence supported the ALJ conclusion that Blakley's coal

---

**6.** In front of the Board, Blakley argued that the x-ray evidence presented "true doubt" and that the ALJ should have found the existence of pneumoconiosis on this basis. This argument is no

longer valid in light of the Supreme Court's recent rejection of this "true doubt" doctrine. *Director, OWCP v. Greenwich Collieries,* —— U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

dust exposure did not contribute to his pulmonary disability.

The ALJ made the following findings with respect to the medical testimony: (1) Drs. Gehlhausen, Watson, Rusche, and Elbert did not offer opinions as to the cause of Blakley's impairment; (2) Drs. Rasmussen and Orris concluded that Blakley's impairment resulted from both coal mine exposure and cigarette smoking; (3) Dr. Combs opined that the disease was related to his coal mine employment; and (4) Drs. Wilhelmus, Miller, and Tuteur determined that Blakley's condition was due solely to cigarette smoking. After examining all of the medical evidence and testimony, the ALJ did exactly what he was supposed to do: give these varying opinions more or less weight based on his view of the credibility of the witnesses, the documented nature of the witnesses' conclusions, and the bases for these conclusions. The ALJ made explicit credibility determinations, concluding that the opinions of Drs. Combs, Orris, Wilhelmus, Miller, and Rasmussen were entitled to "some weight," but that Dr. Tuteur's theories should receive "greater weight."

Blakley challenges these findings, arguing that the ALJ erred in giving more weight to Dr. Tuteur's opinion that Blakley had neither medical nor legal pneumoconiosis. Blakley argues that the ALJ should not have given this opinion *any* weight because of Tuteur's unconventional, and in certain cases minority, medical views. Blakley, attacking Tuteur as one of Amax's "high priced experts," essentially argues that Dr. Tuteur's opinion was hostile to the Act and should have been rejected. Blakley contends that since the Act covers obstructive impairments arising out of coal mine employment, Dr. Tuteur's testimony that coal mine employment cannot lead to obstructive impairment is hostile and non-probative.[7]

■■■■■■ Our "hostility-to-the-Act" rule "allows an ALJ to disregard medical testimony when a physician's testimony is affected by his subjective personal opinions about pneumoconiosis which are contrary to the congressional determinations implicit in the Act's provisions." *Pancake,* 858 F.2d at 1256. In applying this rule, we determine "whether and to what extent those hostile opinions affected the medical diagnosis." *Wetherill,* 812 F.2d at 382. For example, opinions may be hostile when a physician states that he will never diagnose the existence of pneumoconiosis in the absence of a positive x-ray, *see, e.g., Robinson v. Missouri Mining Co.,* 955 F.2d 1181, 1183 (8th Cir. 1992); *Pancake,* 858 F.2d at 1256, or when a doctor testifies, directly contrary to the Act, that simple pneumoconiosis can never be totally disabling. *See, e.g., Kaiser Steel Corp. v. Director, OWCP,* 748 F.2d 1426, 1430 (10th Cir.1984). However, a physician's expression of a view that is at odds with the Act is not enough by itself to exclude that opinion from consideration. *Wetherill,* 812 F.2d at 382.

■■■ We therefore must decide whether Dr. Tuteur's opinion contravenes the statutory and regulatory definition of pneumoconiosis. We conclude that his opinion does not rise to the level of "hostility." Dr. Tuteur testified that coal dust exposure does not cause obstructive impairment and therefore smoking must have caused Mr. Blakley's condition. This contention neither falls into a traditionally hostile category nor contravenes the Act's definition of pneumoconiosis. The Act and its regulations define "pneumoconiosis" broadly and do not establish that dust exposure from coal mine work can necessarily cause obstructive pulmonary disease or impairment. *See* 30 U.S.C. § 902(b); 20 C.F.R. § 718.201; *but cf. Eagle v. Armco, Inc.,* 943 F.2d 509, 511 n. 2 (4th Cir.1991). Rather, the facts and medical opinions in each specific case answer this question.

■■■ The ALJ may, after considering all relevant medical evidence, disregard the medical conclusions of a qualified physician when confronted with countervailing clinical evidence. *Cf. Mitchell,* 25 F.3d at 508; *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 223 (7th Cir.1982). We previously have made it clear that we will not reweigh the

---

7. Both Blakley and Amax spend considerable portions of their briefs debating the substance and meaning of Dr. Tuteur's testimony. Blakley challenges several of Tuteur's conclusions with

evidence outside of the record, and asks us to undertake an intensive *de novo* review of his testimony. We decline Blakley's invitation.

evidence and that it is the ALJ's responsibility, especially in a case such as this which is, as Blakley concedes, a "close call," to examine the evidence and make factual findings and credibility determinations. *Summers v. Freeman United Coal Min. Co.,* 14 F.3d 1220, 1223 ("It is the sole province of the ALJ to weigh the evidence and resolve conflicts therein"); *Battram,* 7 F.3d at 1277–78. In *Summers,* where the ALJ had found that the company had rebutted § 921(c)(4)'s presumption, we refused to engage in a complete reevaluation of the medical evidence. 14 F.3d at 1225. Any argument to the contrary is "premised on the mistaken belief that we have the power to review an administrative decision *de novo,* to reweigh the evidence, to resolve conflicts therein, and to substitute our own inferences, or those of the claimant, for those made by the ALJ. We do not." *Id.* (citing *Meyer,* 894 F.2d at 906). "Our review necessarily encompasses the entire record, yet we neither decide the facts anew nor substitute our judgment for the ALJ's." *Keeling v. Peabody Coal Co.,* 984 F.2d 857, 862 (7th Cir.1993).

 The ALJ noted that it "carefully reviewed" all of the evidence and "each exhibit, ... particularly those related to the claimant's medical condition." The ALJ did not limit his review of the evidence to one study or witness, and ultimately determined that on the whole the evidence supported the conclusion that Amax carried its rebuttal burden. *Cf. Freeman,* 957 F.2d at 303; *Poole v. Freeman United Coal Min. Co.,* 897 F.2d 888, 895 (7th Cir.1990). Although the experts did not conclusively rule out coal worker's pneumoconiosis as a possible factor in Blakley's condition, this by itself does not preclude Amax from rebutting the presumption. *See Beasley,* 957 F.2d at 328. Dr. Orris testified that Blakley's cigarette smoking and exposure to welding fumes together were sufficient to cause all of Blakley's pulmonary impairment. Dr. Rasmussen testified that Blakley's cigarette smoking alone was sufficient to have caused all of his pulmonary impairment. Furthermore, Drs. Miller and Wilhelmus agreed with the other testimony that Blakley's 80–pack year smoking history caused all of his impairment. Notwithstanding Blakley's contentions regarding

Dr. Tuteur's medical opinions, Dr. Tuteur is not a newcomer to black lung litigation before this court. *See, e.g., Lemmons & Co., Inc. v. OWCP,* 43 F.3d 1474 (table) (7th Cir.1995); *Sahara Coal Co. v. Fitts,* 39 F.3d 781 (7th Cir.1994); *Keeling,* 984 F.2d at 857; *Peabody Coal Co. v. Director, OWCP,* 972 F.2d 178 (7th Cir.1992); *Beasley,* 957 F.2d at 324. We previously have recognized that "Dr. Tuteur [is] a well qualified expert (a clinical professor at a well-known medical school).…" *Beasley,* 957 F.2d at 327; *see Keeling,* 984 F.2d at 863 (recognizing Tuteur as "well-qualified"). We do not fashion ourselves as medical experts and do not reweigh each bit of medical testimony. Under the circumstances of this case, the ALJ properly weighed the conflicting evidence and made his determination.

For the foregoing reasons, we ENFORCE the Board's order.

ENFORCEMENT GRANTED.