In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-1329

CONSOLIDATION COAL COMPANY,

*Petitioner,*

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, *et al.*,

*Respondents.*

_____

Petition for Review of an Order of the
Benefits Review Board.
Nos. 22-0238 BLA & 23-0020 BLA

_____

ARGUED OCTOBER 30, 2024 — DECIDED FEBRUARY 18, 2025

_____

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Dale Staten worked as a coal miner in Illinois for almost thirty years until his retirement in 2000. After he passed away in January 2017 from respiratory failure following a two-week hospitalization, his widow, Bernadette Staten, filed for survivor benefits under the Black Lung Benefits Act. A Department of Labor administrative law judge awarded benefits after concluding that Bernadette qualified

for a statutory presumption that Dale died from black lung disease, or pneumoconiosis, because he mined underground for more than 15 years and was totally disabled at the time of his death. A divided Benefits Review Board affirmed.

Staten's former employer, Consolidation Coal Company, which refers to itself as CONSOL, now petitions for review. The company challenges the ALJ's award of benefits, including the finding that Dale suffered from a total disability at the time of his death, and invites us to draw a distinction between pulmonary conditions which are chronic in nature (meaning they develop over a long period of time) and those that are acute (meaning they surface more suddenly and progress). Relying on this difference, CONSOL contends that the 15-year presumption applies only where a miner's total disability results from a chronic pulmonary condition and not from an acute illness like the respiratory failure that caused Dale's death. We see the legal issue differently and affirm the ALJ's award of benefits.

**I**

**A**

The Black Lung Benefits Act provides benefits for the surviving spouse of a miner whose death was due to pneumoconiosis, which Congress defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); see *id.* § 901.

Because black lung cases present challenging issues of proof for miners, Congress created "certain statutory presumptions" to "ease[] their burden." *Dir., Off. of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 280 (1994);

see also *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 688 (4th Cir. 2024) (describing the 15-year presumption as "expressly intended to relax the often insurmountable burden" to prove a black lung claim (citation omitted)). As relevant here, the Act provides a claimant a rebuttable presumption that a miner's death was due to pneumoconiosis upon a showing that the miner engaged in underground coal-mine employment for at least 15 years, and, at the time of his death, had a "totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4); see 20 C.F.R. § 718.305(b)(1). If the claimant qualifies for the presumption, the burden shifts to the employer to prove either that the miner did not have pneumoconiosis or, alternatively, that "his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4); see 20 C.F.R. § 718.305(d)(2)(i)–(ii).

The Department of Labor's regulations explain that a miner is totally disabled if he has a "pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner: (i) [f]rom performing his or her usual coal mine work; and (ii) [f]rom engaging in gainful employment in the immediate area of his or her residence …." 20 C.F.R. § 718.204(b)(1)(i)–(ii). To make a finding of total disability, the ALJ may consider the opinion of a physician "exercising reasoned medical judgment," as well as pulmonary function tests and arterial blood-gas tests. *Id.* § 718.204(b)(2)(iv).

B

On December 17, 2016, an Illinois hospital admitted Dale Staten for respiratory failure after he complained of shortness of breath. His condition steadily deteriorated despite treatment and resulted in diagnoses of respiratory failure,

pneumonia, pulmonary emboli, and pulmonary fibrosis. On December 30, Dale entered a long-term care facility where medical staff intubated him and placed him on a ventilator in a final effort to save his life. He passed away a few days later, on January 4, after his family removed him from life support.

Dale's health challenges predated his hospitalization. Following his retirement from CONSOL in 2000, he saw several doctors for shortness of breath, coughing, and existing cardiac conditions. By any measure, Dale's medical history is long and rather complex. Take, for example, his pulmonary function tests, which are just one metric by which a claimant may establish total disability under the regulations. See 20 C.F.R. § 718.204(b)(2)(i). Dale's 2013 test results qualified him as totally disabled, but a subsequent test in 2016 did not. And though never formally diagnosed with pneumoconiosis prior to his hospitalization and death, one of Dale's doctors interpreted a 2012 CT scan as positive for "possible pneumoconiosis."

We distill this years-long history to a single point for purposes of our review: the ALJ faced a voluminous medical record to examine, which contained some changing, inconsistent, and uncertain results. Ultimately, however, Dale's various test results need not consume or detain us, because the ALJ acted within its authority not only in choosing to credit a well-reasoned medical opinion finding that Dale was totally disabled at the time of his death but also in concluding that CONSOL offered insufficient medical evidence to rebut the presumption.

C

Dale's wife, Bernadette, applied for black lung benefits in March 2017. In support of her claim, Bernadette retained Dr. Sanjay Chavda, who opined that Dale was totally disabled when he died because his placement and dependence on a ventilator precluded him from engaging in any physical activity. For its part, CONSOL provided the competing opinions of Dr. James Castle and Dr. Robert Farney who both relied upon Dale's medical history predating his December 2016 hospitalization to conclude that Dale "was not disabled during his life based on the objective testing in the record." Both doctors discounted the relevance of his hospitalization as reflecting not so much a chronic disabling condition, but instead an "acute illness" at the time of his death.

After finding that Dale's pulmonary function tests and arterial blood-gas studies did not suffice to establish that he suffered from a totally disabling pulmonary condition, the ALJ turned to the relevant medical opinions. The ALJ relied on Dr. Chavda's account as part of finding that Dale "was clearly disabled from a respiratory standpoint" during his hospitalization "and unable to do any work," and therefore totally disabled at the time of his death. Applying the same reasoning, the ALJ declined to credit the opinions of CONSOL's experts because they failed to address whether Dale "was disabled at the time of his death, not at some prior point."

Because Dale mined underground for more than 15 years and suffered from a totally disabling pulmonary or respiratory impairment, the ALJ applied the 15-year presumption that Dale's "death was due to pneumoconiosis," entitling Bernadette to benefits. 30 U.S.C. § 921(c)(4). The burden then shifted to CONSOL to rebut that presumption by establishing

that Dale did not have pneumoconiosis or that his impairment did not arise out of his employment in a coal mine. See *id.*

CONSOL presented x-rays, CT scans, treatment records, and medical opinions as rebuttal evidence, but the ALJ found in the end that the company failed to carry its burden of proving that Dale did not have pneumoconiosis. See 20 C.F.R. § 718.202(a). Most of Dale's scans and medical records, the ALJ explained, were inconclusive. As for Dr. Castle and Dr. Farney's opinions that Dale never suffered from pneumoconiosis, the ALJ found the doctors well-qualified to offer their opinions but nevertheless concluded that they overlooked certain evidence (for example, the results of Dale's 2012 CT scan and pulmonary function tests), making their opinions less credible. Because CONSOL failed to rebut the 15-year presumption, the ALJ awarded Bernadette benefits.

CONSOL appealed to the Benefits Review Board, which affirmed the ALJ in a 2-1 decision. The company presented the same issue to the Board that it raises in its petition for review in our court: whether a finding of total disability may be based on evidence of a miner's acute condition—in this case, Dale's hospitalization for respiratory failure leading to his death—rather than a chronic pulmonary impairment. Two members of the Board answered in the affirmative, explaining that "[n]othing in the Act or regulations requires a showing that the Miner's total disability was chronic in order to invoke the [15-year] presumption." The Board nonetheless concluded that the record showed that Dale suffered from a chronic impairment, which the ALJ considered in crediting Dr. Chavda's opinion.

One member of the Board dissented. Characterizing CONSOL's challenge as an evidentiary one, the dissent found error in the ALJ's reliance on medical evidence arising from Dale's hospitalization, which it attributed to an acute condition, without conducting an independent inquiry to ensure the reliability of the evidence.

CONSOL then sought our review and, in doing so, renews its legal contention that the Act and its implementing regulations require an ALJ to establish total disability by reference to a chronic pulmonary condition. So, the company argues, the ALJ erred when it found Dale totally disabled based on the acute illness and condition that befell him in the weeks preceding his death. The company also continues that the ALJ's award of benefits lacks evidentiary support in the administrative record.

## II

Taking CONSOL's legal challenge first, we conclude that the Black Lung Benefits Act does not require a claimant to prove that a miner was suffering from a chronic pulmonary condition to invoke the 15-year presumption Congress established in 30 U.S.C. § 921(c)(4). See *Gulley v. Dir., Off. of Workers' Comp. Programs*, 397 F.3d 535, 538 (7th Cir. 2005) (affording no deference to an ALJ's legal determinations and instead conducting independent review of questions of law).

Starting, as we must, with the text of the Act, we see nothing requiring a claimant to rely upon a chronic pulmonary impairment to establish total disability. The 15-year presumption requires that a miner establish the "existence of a totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4). The Act's implementing regulations define a

totally disabling impairment as a condition "which, standing alone" prevented the miner from "performing his or her usual coal mine work" and "engaging in gainful employment in the immediate area of his or her residence." 20 C.F.R. § 718.204(b)(1)(i)–(ii). Neither the statute nor the regulations say that the disabling impairment must be "chronic" or, for that matter, draw any distinction between acute and chronic medical conditions. We "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997).

Our conclusion finds reinforcement in how Congress drafted other provisions of the Act. Indeed, the word "chronic" appears in another provision of the same statutory section setting out a series of presumptions. See *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely." (citation omitted)). In neighboring subsection (c)(3), for instance, Congress provided miners who are "suffering or suffered from a *chronic* dust disease of the lung" and can satisfy other diagnostic requirements an irrebuttable presumption "that he is totally disabled." 30 U.S.C. § 921(c)(3) (emphasis added). Yet the term "chronic" does not appear in subsection (c)(4), which requires only that a miner have a "totally disabling pulmonary or respiratory impairment" to benefit from the 15-year presumption. *Id.* § 921(c)(4).

Consider also subsection (c)(1), which extends to miners who are both "suffering or suffered from pneumoconiosis," and were "employed for ten years or more in one or more coal mines" the benefit of a rebuttable presumption that the

pneumoconiosis arose out of their employment. *Id.* § 921(c)(1). In plainer terms, miners seeking to benefit from a presumption under (c)(1) must establish that they have pneumoconiosis—a condition everyone agrees is chronic in nature. Again, though, subsection (c)(4), which creates the 15-year presumption at issue here, contains no such reference to pneumoconiosis or any other chronic condition. See *id.* § 921(c)(4).

This distinction comes into even sharper focus if we look at how Congress defined pneumoconiosis and contrast that with the conditions it established for invoking these various presumptions. The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); see 20 C.F.R. § 718.201(a)(1)–(2) (defining pneumoconiosis similarly). Because subsection (c)(4) operated to provide Bernadette the benefit of a rebuttable presumption that Dale's "death was due to pneumoconiosis," it makes little sense to hinge the availability of the presumption in the first instance on the miner (or his surviving spouse) proving that he suffers from pneumonoconiosis or another chronic lung disease. To conclude otherwise is to presume some level of statutory circularity.

Put another way, we read subsection (c)(4) as exempting the miner from the evidentiary burden of showing he has pneumonoconiosis and instead presuming it upon a showing of a "totally disabling respiratory or pulmonary impairment." We see no reason Congress would use the language it did in articulating the Act's evidentiary requirements, presumptions, and key definitions if it intended, much more simply, to

say that the 10- and 15-year presumptions both require an affirmative showing of a chronic pulmonary condition. See *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[D]ifferences in language … convey differences in meaning.").

What concerns us most with CONSOL's reading is that it would invert the 15-year presumption's burden-shifting framework. Whether a miner has a chronic lung condition is relevant to the employer's burden on rebuttal where they must prove either that the miner does not have pneumoconiosis or that his pulmonary impairment did not arise out of coal mine work. But the burden does not rest with the claimant to prove chronic illness at the first step. See 30 U.S.C. § 921(c)(4). The Benefits Review Board has recognized this precise point, explaining that, "[t]he cause of a miner's totally disabling respiratory impairment is not relevant to invocation [of the 15-year presumption], but is to be considered on rebuttal." *Tanner v. Freeman United Coal Co.*, 10 BLR 1-85, 1987 WL 107328, at *1 (DOL Ben. Rev. Bd. July 27, 1987) (concluding that a "claimant is not required to establish that his totally disabling respiratory or pulmonary impairment is chronic"). We agree.

Perhaps recognizing the shortfalls of its statutory position, CONSOL redirects our focus to the Act's regulations and, in particular, to the use of "pneumoconiosis" and "chronic" in a subsection defining the term "total disability." That provision tells us that "miners who are totally disabled due to pneumoconiosis" are entitled to benefits. 20 C.F.R. § 718.204(a). In assessing total disability, the regulation continues, ALJs shall not consider nonpulmonary or nonrespiratory conditions, unless those conditions cause "a chronic respiratory or

pulmonary impairment." *Id.* So, the company says, the regulations require that a claimant prove the existence of a chronic lung condition and prohibit the use of acute impairment to establish disability.

The point is fair if we limit our review to subsection (a). But CONSOL's position falters the moment we broaden our focus to another subsection of the same regulation. For its part, subsection (c)(2) specifies that "proof that the miner … suffered from a totally disabling respiratory or pulmonary impairment … shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis," *except* as provided by the 15-year presumption found in § 718.305. 20 C.F.R. § 718.204(c)(2). Put another way, subsection (c)(2) establishes that a claimant invoking the 15-year presumption shoulders no obligation to show that a miner suffered from pneumoconiosis to establish entitlement to benefits.

All of this matters here because CONSOL makes no claim that the ALJ failed to comply with the limitations in subsection (a) in finding Dale totally disabled based on a nonpulmonary or nonrespiratory condition. Nor could it. As the ALJ described it, Dale received treatment for "several respiratory conditions including pulmonary fibrosis and ground-glass opacities, pulmonary emboli, and pneumonia" shortly before his death.

Finally, CONSOL relies on the so-called regulatory Appendix, which sets out the qualifying criteria for pulmonary function studies and arterial blood-gas tests—the two types of medical evidence, apart from qualified medical opinions, that ALJs may consider in assessing total disability. See 20 C.F.R. § 718.204(b)(2). The Appendix specifies that both types

of medical evidence are not admissible if "performed during or soon after an acute respiratory illness." App. B to Part 718 (2)(i). The company views this limitation as suggesting that ALJs may consider only chronic impairments—and not acute conditions—when assessing total disability.

Here, too, we cannot get there. The company's contention overlooks the fact that the regulations permit an ALJ to find a miner totally disabled—even in the absence of other qualified medical evidence—based on a physician's "reasoned medical judgment" that a "miner's respiratory or pulmonary condition … prevented the miner from engaging in employment." 20 C.F.R. § 718.204(b)(2)(iv). We see no language in § 718.204, the section of the regulation describing total disability, requiring that a physician consider only the impact of a chronic condition on a miner's ability to engage in employment.

Our adopting CONSOL's position would effectively require a claimant to prove a miner had pneumoconiosis, or some other chronic lung disease, to benefit from the presumption that a miner had or died from pneumoconiosis. This requirement finds no footing in the text of the Act or its regulations. Nor, to our knowledge, has any circuit adopted the interpretation advanced by CONSOL, and the Benefits Review Board has expressly held (now, on two occasions) to the contrary. In the end, then, the ALJ committed no legal error.

## III

Separate and apart from its statutory argument, CONSOL also challenges the broader merits of the ALJ's decision to award benefits. In the company's view, the ALJ erred by crediting Dr. Chavda's opinion and not those of Dr. Castle and Dr. Farney.

On appeal, CONSOL faces a steep climb. We affirm an ALJ's findings so long as they are "rational, supported by substantial evidence and consistent with governing law." *Old Ben Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 292 F.3d 533, 538 (7th Cir. 2002). The substantial evidence standard is somewhat of a misnomer, however, because "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence means "more than a mere scintilla," which is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). In assessing whether an ALJ's decision has substantial evidentiary support, we undertake a full review of the record though "[w]e cannot reweigh the evidence or make credibility determinations." *Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1393 (7th Cir. 1994).

The ALJ's decision finds ample support in the administrative record.

## A

We find no fault with the ALJ's reliance on Dr. Chavda's opinion, which CONSOL claims is replete with inconsistencies, fails to adequately explain the medical evidence, and mistakenly relies upon Dale's hospitalization. The central shortcoming in the company's position, however, is that it depends on our adoption of its legal contention that total disability must arise from a chronic pulmonary condition. But we have reached the opposite conclusion. And with the legal issue resolved, CONSOL does little to undermine Dr. Chavda's assessment that Dale was totally disabled at the time of his death.

Even if we determined that Dale's hospitalization and condition preceding his death were not appropriate factors to consider in evaluating total disability, CONSOL's challenge to the ALJ's assessment of the other medical evidence amounts to little more than an invitation for us to reweigh the evidence. The company claims that Dr. Chavda erred in crediting a 2013 pulmonary function test which produced results qualifying Dale as totally disabled, even though a later 2016 test produced a non-qualifying result, for example. But whether the results of the 2013 or 2016 pulmonary function tests should control is the type of contention with which we are ill-equipped to engage. To the contrary, "weighing conflicting medical evidence is precisely the function of the ALJ as fact-finder." *Poole v. Freeman United Coal Min. Co.*, 897 F.2d 888, 895 (7th Cir. 1990); see *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1322 (7th Cir. 1995) ("We do not fashion ourselves as medical experts and do not reweigh each bit of medical testimony."). For our purposes, CONSOL's challenge fails because it does not prove any error with the "ALJ's choice of methodology," which need only "be reasonable and informed by evidence." *Safeco Ins./Liberty Mut. Sur. v. Dir., Off. of Workers' Comp. Programs*, 103 F.4th 1285, 1291 (7th Cir. 2024).

Here, the ALJ found Dr. Chavda's opinion more credible because he accounted for the entirety of the medical evidence—including Dale's hospitalization and condition prior to his death—which is something Dr. Castle and Dr. Farney failed to do. Even though the ALJ concluded that Dr. Castle and Dr. Farney were similarly qualified, "[t]he ALJ may, after considering all relevant medical evidence, disregard the medical conclusions of a qualified physician when confronted with countervailing clinical evidence," which is exactly what happened here. *Blakley*, 54 F.3d at 1321.

CONSOL raises a range of other medically-detailed challenges to the ALJ's ruling—so many so that we, as generalist judges, have a hard time keeping one straight from the other. Do not read this as a criticism but instead as our saying that we have taken a close look at the ALJ's opinion and, in the end, conclude it grounds itself in substantial evidence.

B

CONSOL also takes issue with the Benefits Review Board's decision affirming the ALJ's award of benefits. The company alleges that the Board exceeded the scope of its statutory authority by conducting an independent review of the medical evidence. But as we have explained many times over, when a black lung case comes before our court, "our principal focus is on the reasoning of the ALJ," not that of the Board. *Apogee Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 113 F.4th 751, 758 (7th Cir. 2024). And because our scope of review is similar to that of the Board—ensuring that the ALJ's decision is "rational, supported by substantial evidence, and in accordance with applicable law," *Consol. Coal Co. v. v. Dir., Off. of Workers' Compensation Programs*, 911 F.3d 824, 838 (7th Cir. 2018)—any misstep by the Board stands to be corrected by our subsequent review of the ALJ's decision. See *Crowe ex rel. Crowe v. Zeigler Coal Co.*, 646 F.3d 435, 440 (7th Cir. 2011) ("The [BRB] has the identical scope of review when sitting as an appellate panel reviewing decisions of the ALJ." (quoting *Zettler v. Dir., Off. of Workers' Comp. Programs*, 886 F.2d 831, 834 (7th Cir. 1989)).

This is not to suggest that we see any infirmity, substantive or procedural, in the Board's order, however. On the contrary, we see no merit to the contention that the Board exceeded its scope of review, and we reach the same conclusion

on the merits regardless: the ALJ's award of benefits finds support in substantial evidence.

We therefore DENY the petition for review and AFFIRM the judgment of the Benefits Review Board.